[940 NYS2d 229]

In the Matter of THE NEW YORK COUNTY LAWYERS' ASSOCIATION et al., Appellants, and THE NEW YORK CRIMINAL BAR ASSOCIATION, INC. et al., Intervenors-Petitioners-Appellants, v MICHAEL R. BLOOMBERG, in His Official Capacity as Mayor of the City of New York, et al., Respondents, and THE LEGAL AID SOCIETY OF NEW YORK, Intervenor-Respondent-Respondent.

First Department, March 15, 2012

## APPEARANCES OF COUNSEL

*Haynes and Boone, LLP*, New York City (*Jonathan D. Pressment*, *David M. Siegal* and *Kendyl T. Hanks* of counsel), for New York County Lawyers' Association and others, appellants.

*Satterlee Stephens Burke & Burke LLP*, New York City (*Zoë E. Jasper* and *Alun W. Griffiths* of counsel), for New York Criminal Bar Association, Inc. and another, appellants.

*Michael A. Cardozo, Corporation Counsel*, New York City (*Julian L. Kalkstein, Larry A. Sonnenshein* and *Thaddeus Hackworth* of counsel), for Michael R. Bloomberg and others, respondents.

*Davis Polk & Wardwell LLP*, New York City (*Daniel F. Kolb, Daniel J. O'Neill* and *Jennifer Marcovitz* of counsel), for Legal Aid Society, respondent.

## OPINION OF THE COURT

ANDRIAS, J.

In this CPLR article 78 proceeding, we are called upon to judge the legality, not the wisdom or the prudence, of the City of New York's proposed revisions to its Indigent Defense Plan with respect to the assignment of counsel in cases in which the initial provider at arraignment is unable to represent the indigent person due to a conflict of interest. Upon our review of the record and relevant statutes, we conclude that the City's revised plan, and its proposed implementation pursuant to chapter 13 of title 43 of the Rules of the City of New York (43 RCNY 13-01 *et seq.*), is not arbitrary and capricious or irrational (*see Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County*, 34 NY2d 222, 230-231 [1974]), does not require the consent of the county bar associations (the County Bars), and does not violate section 722 of article 18-B of the County Law (as amended by L 2010, ch 56, § 1, part E, § 3) or Municipal Home Rule Law § 11 (1) (e).

■ The revised plan is a lawful "combination" plan under County Law § 722 (4), providing indigent representation under the "private legal aid bureau or society" option of section 722

(2), which, contrary to petitioners' contention, is not restricted to primary assignments, and the "plan of a bar association" option of section 722 (3), which, contrary to petitioners' contention, does not give the County Bars the exclusive right to provide "conflict counsel." Although the revised plan provides for the assignment of conflict cases to institutional providers under section 722 (2), it continues to permit the assignment of conflict cases to private counsel serving on Criminal Defense Panels (*see* 43 RCNY 13-03) created under the authority of New York City Executive Order No. 178 of 1965 and pursuant to the 1965 "Bar Plan," to be administered in accordance with the rules of the Appellate Division, First and Second Departments (NY City Executive Order No. 136 of 2010), and does not improperly usurp the role of the County Bars. Nor does the plan either eliminate the judiciary's right under County Law § 722 (4) to assign counsel when a conflict of interest prevents assignment pursuant to the plan or displace the judiciary's role in authorizing the appointment of experts (*see* 43 RCNY 13-05).

County Law § 722

In 1965, in response to the United States Supreme Court decision in *Gideon v Wainwright* (372 US 335 [1963]) and the Court of Appeals decision in *People v Witenski* (15 NY2d 392 [1965]), New York State enacted article 18-B of the County Law (§ 722 *et seq.*) (L 1965, ch 878), which provided,

> "The board of supervisors of each county[1] and the governing body of the city in which a county is wholly contained shall place in operation . . . a plan for providing counsel to persons charged with crime . . . who are financially unable to obtain counsel" (L 1965, ch 878, sec 1, § 722).

The county or city was given four options for providing such counsel: representation by (1) "a public defender appointed pursuant to county law article [18]-A"; (2) "counsel furnished by a private legal aid bureau or society"; (3) "counsel furnished pursuant to a plan of a bar association . . . whereby the services of private counsel are rotated and coordinated by an administrator," or (4) "according to a plan containing a combination of any of the foregoing" (L 1965, ch 878, sec 1, § 722 [1]-[4]). On June 22, 2010, County Law § 722 (3) was amended to add an "office of the conflict defender" option:

> "3. (a) Representation by counsel furnished pursuant to *either or both of the following:* a plan of a bar

---

1. Later changed to "governing body" (L 1975, ch 682, § 10).

association in each county or the city in which a county is wholly contained whereby: *(i)* the services of private counsel are rotated and coordinated by an administrator, and such administrator may be compensated for such service; *or (ii) such representation is provided by an office of conflict defender"* (L 2010, ch 56, § 1, part E, § 3 [amendments in italics]).[2]

County Law § 722 (4) also provides that if the county or city does not have a plan conforming to option 3 or 4 and the court is satisfied that "a conflict of interest prevents the assignment of counsel pursuant to the plan in operation, or when the county or the city . . . has not placed in operation any plan conforming to that prescribed in this section, the [court] . . . may assign any attorney," and that attorney will receive compensation pursuant to article 18-B.

The Evolution of the City's Indigent Defense Plan

On November 27, 1965, then Mayor Robert Wagner issued Executive Order No. 178, which, in conjunction with the joint plan of the Association of the Bar of the City of New York and the New York County Lawyers' Association (the 1965 Bar Plan) that was approved by resolution of the City Council on April 28, 1966, established a County Law § 722 (4) combination plan employing the section 722 (2) and section 722 (3) options. For the section 722 (2) component, the Legal Aid Society (LAS) was designated as the primary provider for persons charged with crimes within the City who were determined by a court to be entitled to representation under article 18-B. For the section 722 (3) component, when a court deemed that counsel other than LAS was required because of either a conflict of interest or other good cause, or because the crime charged was punishable by death or life imprisonment, representation was to be provided from a panel of private lawyers identified by the County Bars and screened by committees in which the County Bars played a role.

---

**2.** The syntax of this provision, with its use of two colons, is somewhat confusing. It would appear that the second colon should not have been included and that the "(i)" that appears in the third line after it should have been placed after the phrase "pursuant to either of both of the following:" and before the phrase "a plan of a bar association." However, even if the amendment as drafted was intended to require County Bar approval of a plan employing the newly created option of an office of conflict defender, it would not alter our determination that the City's revised Indigent Defense Plan is a valid section 722 (4) combination plan. The revised plan does not call for the creation of an office of conflict defender, and section 722 (3) does not provide the exclusive means for appointing conflict counsel.

On January 6, 2010, title 43 of the Rules of the City of New York was amended, effective February 5, 2010, to add chapter 13 (43 RCNY 13-01 *et seq.*), entitled, "Indigent Defense Plan for the City of New York." Note 1 to section 13-01 explains:

> "The most recently promulgated Plan was published on November 27, 1965, in Executive Order Number 178: Furnishing of Counsel to Indigent Criminal Defendants Within the City of New York ('1965 Plan'). In the intervening forty-three years, *the City has made several changes* in the procedures governing the provision of indigent defense in order to ensure that the highest quality representation is provided to indigent defendants, and that the most advantageous arrangement for the City is implemented. In order to bring the Plan into conformity with current practice, this rulemaking is necessary" (emphasis added).

While LAS is still the primary institutional provider, one of these "changes" occurred in 1996, when the City began contracting with other institutional providers to provide indigent legal services pursuant to County Law § 722 (2). New sections of the Appellate Division rules approved by the County Bars had also been adopted in 1980 and 1991 by the First and Second Departments whereby committees designated by the Appellate Division would perform the function of screening attorneys for the Criminal Defense Panels (*see* 22 NYCRR 612.0 *et seq.*; 22 NYCRR § 678.1 *et seq.*).

Accordingly, 43 RCNY 13-02 addresses the procurement of institutional providers. 43 RCNY 13-03 addresses the assignment of counsel at the trial and appellate levels in criminal matters, providing in part:

> "In any case where, due to conflict of interest or other appropriate reason, Providers decline or are unable to represent an indigent person at the trial or on appeal in a criminal matter, counsel shall be furnished by attorneys assigned by the ACP [Assigned Counsel Plan] from the appropriate Criminal Defense Panel of the Appellate Division, First or Second Judicial Department, or by alternate providers selected by the CJC [Office of the Criminal Justice Coordinator] through the City's procurement process."

The Criminal Defense Panels are to be managed by the newly created Office of the Assigned Counsel Plan (OACP), which is

overseen by two administrators in consultation with the Presiding Justices of the First and Second Departments and administered in accordance with the rules of those courts (43 RCNY 13-01).

43 RCNY 13-04 addresses the assignment of counsel at the trial and appellate levels in family law matters. 43 RCNY 13-05 addresses the appointment of experts in matters handled by panel members. 43 RCNY 13-06 sets forth payment procedures in criminal matters handled by attorneys on Criminal Defense Panels and experts assigned to those matters. These include submitting vouchers to the OACP "for review prior to payment by the comptroller" (*id.*).

Pursuant to chapter 13, on February 3, 2010, the City issued a request for proposals (RFP) inviting bids by private institutional vendors for the provision of indigent criminal defense services and for the assignment of conflict cases. Noting that seven organizations provided trial-level services in New York City and that the City expected to award at least one more contract in each county, the RFP stated that "the City is interested in providing representation in conflict cases and anticipates issuing awards to vendors who propose to provide representation in conflict cases." A February 8, 2010 addendum corrected a statement in the RFP that "[t]here will be at least 2 institutional providers in each county who will provide both primary and conflict representation," stating that "[t]he City has not decided and the RFP does not state that a definite number of providers will be selected for each county."

On March 2, 2010, the Mayor issued New York City Executive Order No. 132, which repealed Executive Order No. 178, but stated that "Criminal Defense Panels created under the authority of Executive Order 178 . . . shall continue to exist and shall be administered in accordance with the rules of the Appellate Division, First and Second Judicial Departments." However, a March 2, 2010 addendum to the RFP stated that the City's plan for indigent legal services as set forth in Executive Order No. 132 provided for a "private legal aid bureau or society" option in conformity with County Law § 722 (2), and that the prior section 722 (3) bar association option is "no longer in effect." Faced with the prospect of Criminal Defense Panel attorneys losing their position as the sole provider of conflict representation, in June 2010, petitioners filed this proceeding challenging Executive Order No. 132, the February 3, 2010 RFP, as amended, and chapter 13 as violative of, among other things, County Law § 722 and Municipal Home Rule Law § 11 (1) (e).

On June 13, 2008, the Mayor had issued New York City Executive Order No. 118, which repealed Executive Order No. 178, but continued the Criminal Defense Panels, stating that in conflict cases "counsel shall be furnished by attorneys assigned by the ACP from the appropriate Criminal Defense Panel of the Appellate Division, First or Second Judicial Department." On July 13, 2010, the Mayor issued New York City Executive Order No. 136, which repealed Executive Orders No. 132 and No. 118. Executive Order No. 136 also repealed Executive Order No.178,

> "except that Criminal Defense Panels created under the authority of Executive Order 178 of 1965 and pursuant to the plan submitted by bar associations in accordance with subdivision 3 of section 722 of the County Law shall continue to exist and shall be administered in accordance with the rules of the Appellate Division, First and Second Judicial Departments."

Executive Order No. 136 thus retained the 1965 Bar Plan Panels, which, along with institutional providers, would be available to serve as conflict counsel under the City's revised County Law § 722 (4) combination plan.

In response to Executive Order No. 136, petitioners amended their pleading, seeking a direction that respondents "continue the current provision of indigent defense services under the 1965 Bar Plan, unless and until a constitutional and statutorily compliant alternate system is established." Petitioners also asked the court to declare that "any contracts entered into by Respondents . . . pursuant to Chapter 13, Executive Order 136 or the RFP are invalid to the extent they do not comply with all provisions of Article 18-B and the 1965 Bar Plan," and moved for an order enjoining respondents "from executing, entering into or renewing any contracts with respect to conflict [cases] . . . without first obtaining the consent of the County Bars."

Analysis

"As a matter of statutory construction, a court must attempt to effectuate the intent of the Legislature and where the terms of a statute are clear and unambiguous, the court should construe it so as to give effect to the plain meaning of the words used" (*Matter of World Trade Ctr. Bombing Litig.*, 17 NY3d 428, 442 [2011] [internal quotation marks, alterations and citations omitted]). "A statute or legislative act is to be construed as a whole, and all parts of an act are to be read and construed together to determine the legislative intent" (*Frank v Meadow-*

*lakes Dev. Corp.*, 6 NY3d 687, 691 [2006], quoting McKinney's Cons Laws of NY, Book 1, Statutes § 97). A construction "resulting in the nullification of one part of the [statute] by another[ ] is impermissible" (*Rangolan v County of Nassau*, 96 NY2d 42, 48 [2001]) and "[a] construction rendering statutory language superfluous is to be avoided" (*Matter of Branford House v Michetti*, 81 NY2d 681, 688 [1993]; *see also Majewski v Broadalbin-Perth Cent. School Dist.*, 91 NY2d 577, 587 [1998]).

▪ In enacting article 18-B of the County Law, the Legislature unambiguously placed the responsibility for implementing an Indigent Defense Plan on the county or city, not on the County Bars, by stating: "The [governing body] of each county and the governing body of the city in which a county is wholly contained *shall* place in operation throughout the county a plan for providing counsel" to indigent persons charged with a crime (former § 722 [emphasis added]). The Legislature also gave the county or city, not the County Bars, the sole discretion to select the components of the plan, provided that the plan conformed to one of four statutory options set forth in section 722 (1)-(4) (*see Goehler v Cortland County*, 70 AD3d 57, 60 [2009]). Exercising this discretion, the City did not violate County Law § 722 or Municipal Home Rule Law § 11 (1) (e) when, without the consent of the County Bars, it opted to employ a section 722 (4) combination plan that appointed conflict defenders from either institutional providers selected by the CJC through the City's procurement process, pursuant to section 722 (2), or from the existing Criminal Defense Panels, pursuant to section 722 (3).

▪ Even if the practical effect of the revised plan will be to reduce the number of conflict cases assigned to 18-B Panel attorneys, the revised plan does not eliminate the participation of private attorneys through Criminal Defense Panels appointed by the First and Second Departments upon the recommendation of screening or advisory committees established under rules of those courts. Rather, recognizing that LAS has not been the sole institutional provider of indigent defense services since 1996, the revised plan rationally supplements the original 1965 plan by providing that where one institutional provider declines or is unable to represent an indigent person due to a conflict of interest, representation shall be provided by an attorney assigned from a Criminal Defense Panel under section 722 (3) or by an alternate institutional provider under section 722 (2) (*see* 43 RCNY 13-03). Thus, as stated by Judge Batts in *New York County Lawyers' Assn. v Bloomberg* (2011 WL 4444185, *5, *6,

2011 US Dist LEXIS 112929, *15, *16 [SD NY 2011]), in which the County Bars challenged the constitutionality of the City's revised plan:

> "[T]he only actual change to the City's indigent defense system is that conflict cases are no longer automatically assigned to the 1965 Bar Plan Panels . . . Aside from the aforementioned change regarding the automatic assignment of conflict cases, Executive Order 136 does not purport to make any changes to the rights and responsibilities of the County Bars with respect to the administration of the 1965 Bar Plan Panels."

The dissent disagrees and postulates that the revised plan is not a valid combination plan because the City did not have the discretion to implement, without the participation and approval of the County Bars, *the revisions to* the original County Law § 722 (3) component, which (according to the dissent) materially deviate from the original 1965 Bar Plan. The dissent believes that the revised plan materially differs from the 1965 Bar Plan because it removes the County Bars from their roles as the managers and administrators of the Bar Plan Panels in favor of the OACP. However, the 1965 Bar Plan assigned those duties to an administrator appointed by the Appellate Divisions and paid by the City. OACP is "overseen by two Administrators in consultation with the Presiding Justices of the First and Second Judicial Departments" (43 RCNY 13-01) and takes no authority away from the County Bars.[3] With respect to representation by private counsel, the revised plan uses the same bar plan that has been in place since 1965, with the long-standing modifications by the Appellate Divisions that the County Bars approved (*see* 22 NYCRR 612.0 *et seq.*; 22 NYCRR 678.1 *et seq.*). 18-B Panel attorneys will continue to be assigned by the courts as counsel for indigent defendants and will be organized in Criminal Defense Panels managed and screened as agreed by the County Bars, thereby ensuring that cases will be assigned to qualified and accountable attorneys, without favoritism or nepotism, when the bar plan option is invoked. We note that the

---

**3.** Supreme Court held that 43 RCNY 13-06, which sets forth procedures for the payment of attorneys on Criminal Defense Panels and experts who render services in criminal court, violates County Law §§ 722-b and 722-c and the Municipal Home Rule Law. Accordingly, it granted petitioners' request for injunctive relief to the extent of permanently enjoining the City from reviewing vouchers pursuant to 43 RCNY 13-06.

most serious criminal matters, homicide cases, will continue to be assigned to experienced 18-B Panel attorneys.

 Neither the language of the statute nor its tenor supports the dissent's view that County Law § 722 (2) applies to primary assignments only. The statute provides for "representation [in criminal proceedings] by counsel furnished by a private legal aid bureau or society designated by the county or city, organized and operating to give legal assistance and representation to persons charged with a crime within the city or county who are financially unable to obtain counsel." This unambiguous language does not distinguish between primary and conflict assignments and does not impose any restraints on the City with respect to the types or number of cases that it may assign to qualified institutional providers. Thus, as Supreme Court found, where one legal aid bureau or society has a conflict, under section 722 (2) the case may be assigned to another legal aid bureau or society that has no conflict or does not otherwise decline the representation.[4] The City has been contracting with multiple institutional providers to provide indigent legal services pursuant to County Law § 722 (2) since 1996, and the limitations period for challenging the City's right to do so has long expired.

Nor is there any language in County Law § 722 that obligates a county or city to obtain the County Bar's approval should it elect to include a section 722 (2) option in an indigent defense plan that encompasses conflict cases. Indeed, as a matter of discretion, a county or city may adopt a plan that employs the section 722 (2) option alone, subject only to the condition that when "a conflict of interest prevents the assignment of counsel pursuant to the plan in operation," the assigning judge "may assign any attorney in such county or city" (County Law § 722 [4]). For example, under a section 722 (2) plan, the first defendant in a multiple-defendant matter could be assigned to LAS, the second to another institutional provider, and the third to an attorney appointed by the court.

 The June 2010 amendment to County Law § 722 (3) does not give the County Bars the exclusive right to provide conflict counsel. The amendment, adopted in response to *Goehler v Cortland County* (70 AD3d 57 [2009], *supra*), authorizes the use of "an office of conflict defender" as a permissible option, but does

---

4. Of course, as the City stated at the argument of this appeal, there would be no restriction on continuing to assign conflict cases to the 18-B Panel lawyers just because an institutional provider took the initial conflict assignments on certain arraignment shifts or days.

not deprive the City of its discretion to formulate a plan of its choosing for the distribution of cases involving indigent defendants, so long as the plan is based on one of the four options set forth in County Law § 722 (1)-(4).[5] As the sponsor's memo regarding the original assembly bill that became Laws of 2010, chapter 56, § 1, part E, § 3 indicates, the amendment was first contemplated to authorize "counties to create an office of conflict defender in order to provide representation to indigent defendants who qualify for representation by the public defender's office, but who cannot be represented by the public defender due to the public defender's conflict of interest" (2009 Senate-Assembly Bill S6606, A9706, part F). Nor is there any language in the amended subdivision that would indicate that the amendment was intended to limit the City's ability to assign conflict cases to institutional providers pursuant to section 722 (2).

Indeed, as Supreme Court observed, a construction of County Law § 722 that would give exclusively to the County Bars the role of providing conflict counsel would obligate the City to include a section 722 (3) option in its Indigent Defense Plan, which would impermissibly render meaningless the choice given to the City under section 722 (4) of implementing a plan using a combination of any of the other three alternatives in section 722. For example, under the unambiguous language of the statute, a county or city, as a matter of discretion, may lawfully formulate a combination plan under County Law § 722 (4) that employs the public defender option of section 722 (1) and a legal aid option of section 722 (2), without any involvement of the County Bars under section 722 (3). In this scenario, the public defender's office could act as the primary indigent defender, with conflict assignments given to a legal aid society or societies. An interpretation of the statute that would make a bar plan under section 722 (3) the sole mechanism for conflict defense would impermissibly preclude the City from exercising this option and would be tantamount to impermissible judicial legislation (*see People v Finnegan*, 85 NY2d 53, 58 [1995], *cert denied* 516 US 919 [1995]), granting the County Bars the unbridled

5. In *Goehler*, a local plan that created an office of conflict attorney appointed by the County Legislature was invalidated because no such option was authorized by County Law § 722. In contrast, chapter 13 of title 43 of the Rules of the City of New York merely rearranges how the City chooses to administer its Indigent Defense Plan; it not does not seek to employ an unauthorized option.

power to veto any attempt by the City to revise its Indigent Defense Plan, as well as a monopoly in the assignment of conflict cases, that is not supported by the text, purpose, or legislative history of article 18-B. If the Legislature had wished to exclude conflict representation from the ambit of section 722 (2) and to designate private attorneys from Criminal Defense Panels as the exclusive conflict defenders pursuant to section 722 (3), it would have included language to that effect in the statute.[6]

The dissent also states that the revised plan impermissibly transfers the authority to decide whether a conflict of interest exists from the judiciary to the institutional provider. However, while the 1965 Bar Plan provides that the court will appoint counsel from the appropriate panel where it "deems the assignment to be required in the interest of justice because of . . . a conflict of interest," it does not state that it is for the court,

---

**6.** In this regard, we note that a bill was presented to the State Assembly (A6561) on March 21, 2011 and to the State Senate (S5421) on May 19, 2011 seeking to amend County Law § 722 (2) and (3) (a) to "clarify language to provide for indigent criminal conflict cases." This proposed amendment, designed to grant petitioners the very relief they seek in this proceeding, states:

"2. *Notwithstanding any other provision of this article, representation in all criminal conflict cases shall be furnished by private counsel duly certified as qualified in accordance with paragraph (a) of subdivision three of this section except in any county operating an office of conflict defender as described in paragraph (c) of subdivision three of this section. In any multiple defendant case representation to one defendant shall be furnished by one legal aid bureau or society, or one other provider designated to the county or city, organized and operating to give legal assistance and representation to persons charged with a crime within the city or county who are financially unable to obtain counsel; all other defendants in the same case shall be considered conflict cases and representation shall be provided by private counsel duly certified as qualified in accordance with paragraph (a) of subdivision three of this section except in any county operating an office of conflict defender as described in paragraph (c) of subdivision three of this section.*

"[3] (a) Representation by counsel furnished pursuant to either or both of the following: a plan of a bar association in each county *or a bar association of* the city in which a county is wholly contained whereby: (i) the services of private counsel are rotated and coordinated by an administrator, and such administrator may be compensated for such service; or (ii) such representation is provided by an office of conflict defender" (2011 Senate-Assembly Bill S5421, A6561 [proposed amendments in italics]).

rather than counsel, to determine whether a conflict exists.[7] In practice, it is the provider or attorney that has the ethical duty to determine whether a conflict of interest exists (*see* Rules of Professional Conduct [22 NYCRR 1200.0] rules 1.7–1.10). Consistent with this, Executive Order No. 178 stated: "In those cases where by reason of a conflict of interest or other appropriate reason . . . *the Legal Aid Society declines to represent [an indigent] defendant*, such defendant shall be represented by counsel furnished pursuant to the [1965 Bar Plan]" (emphasis added). In similar fashion, recognizing that there are now multiple institutional providers, 43 RCNY 13-03 provides that where one institutional provider declines or is unable to represent an indigent person due to a conflict of interest, "counsel shall be furnished by attorneys assigned" from a Criminal Defense Panel, pursuant to section 722 (3), "or by alternate providers," pursuant to section 722 (2).

Based on its belief that there is no valid plan of the bar association, the dissent in effect states that the revised plan is a County Law § 722 (2) legal aid bureau plan, not a section 722 (4) combination plan. It then finds that the revised plan is invalid because it "bypass[es] all judicial involvement in the appointment of conflict counsel" as required by County Law § 722 (4), and impermissibly crafts an alternative option in violation of Municipal Home Rule Law § 11.

A court's authority to appoint conflict counsel under section 722 (4) exists only when the indigent defense plan is not a combination plan or a section 722 (3) plan. As detailed above, the City's revised plan is a valid section 722 (4) combination plan, comprised of the section 722 (2) and section 722 (3) options. However, even assuming for the purpose of argument that the revised plan must be analyzed as a section 722 (2) plan, the dissent's section 722 (4) analysis is flawed in that it ignores critical language of the statute.

Section 722 (4) provides that where a county or city does not have a valid section 722 (4) or section 722 (3) plan, the court *may* assign *any* attorney only where it finds that "a conflict of interest *prevents the assignment of counsel pursuant to the plan in operation*" (County Law § 722 [4] [emphasis added]). By

---

**7.** In contrast, the plan provides that "[u]nder this plan, *whenever a determination has been made by a court* that a defendant is entitled to representation under Article 18-B of the County Law, the court shall designate and appoint [LAS] as the attorney of record for the defendant in all cases, unless . . . ." (emphasis added.)

virtue of this language, the court's authority to appoint conflict counsel comes into play only when there is no method of resolving conflicts inherent in the plan. In its revised plan, the City has designated multiple institutional providers under section 722 (2), with one provider taking primary assignments and the second available to take over those assignments in the event of a conflict.[8] Accordingly, because the plan provides a method whereby the first provider's conflict of interest will not prevent the case from being assigned to a second provider, the court would not be required to exercise its authority under section 722 (4) to appoint counsel directly unless both the first and second institutional providers had conflicts. In that event, there is nothing in the revised plan that would prevent the assignment of counsel by the court directly under section 722 (4). Furthermore, in that instance, in conformity with past practice, the court could, and undoubtedly would, assign counsel from the 18-B Panels.

■ Finally, petitioners argue that chapter 13 of title 43 of the Rules of the City of New York usurps the judge's role in authorizing experts. This ignores the clear language to the contrary in chapter 13, which specifically provides that "[a]ttorneys representing indigent persons pursuant to this chapter may seek the appointment of an investigator, expert or other service provider pursuant to section 722-c of the County Law" (43 RCNY 13-05), pursuant to which such experts are appointed by the courts.

In concluding that the City's revised plan is a valid County Law § 722 (4) combination plan and that it does not violate the letter or spirit of section 722, this Court is not endorsing the plan. It may turn out in practice that the 1965 arrangement (§ 722 [2]-[3]) is far superior to the City's revised plan because of its flexibility and simplicity, whatever its heavy costs. In practice, the new plan may or may not substantially reduce the numerical assignments of 18-B Panel members (see n 8 supra). If it does, there may be a dramatic number of experienced lawyers dropping off the panels to seek other work, to the obvious detriment of the criminal justice system. Contrariwise, the City's envisioned efficiencies may not materialize; on its face

8. At oral argument, both the City and LAS stated that under the revised plan 18-B Panel attorneys will continue to take conflict cases on days and/or shifts on which LAS is the primary intake defender and in cases in which there are multiple defendants; LAS will take conflicts only when another institutional defender is the shift or day's primary defender.

the new plan would seem to present significant scheduling and logistical issues. Whatever the outcome of the implementation of the City's proposed revised plan, however, the merit or wisdom of the enterprise is not the province of the courts. The question is merely whether the City's new plan meets the statutory criteria of County Law § 722 without doing violence to the essential structure of the 1965 Bar Plan, and we find that it does.

Accordingly, the order and judgment (one paper), Supreme Court, New York County (Anil C. Singh, J.), entered January 19, 2011, which, to the extent appealed from as limited by the briefs, denied the petition and granted respondents' cross motion for summary judgment dismissing this proceeding brought pursuant to CPLR article 78 insofar as it challenges respondent the City of New York's Indigent Defense Plan (43 RCNY 13-01–13-05), should be affirmed, without costs.

ABDUS-SALAAM, J. (dissenting). I respectfully dissent and would grant the petition.

This proceeding challenges the plan of respondents Mayor Bloomberg, his Criminal Justice Coordinator (CJC) and the City of New York to make changes to the indigent defense system in New York City that has been in place since 1965. The core of the dispute is the manner in which the City proposes to assign so-called "conflict cases"—cases in which the primary provider at arraignment (The Legal Aid Society or another legal aid organization) is unable to accept representation due to a conflict of interest. Until recently, conflict defense counsel have been appointed through panels of individual attorneys created and administered by the County Bar Associations, Assigned Counsel Panels commonly referred to as 18-B Panels. However, in January 2010, the City revised title 43 of the Rules of the City of New York by adding chapter 13, which provides that in the case of a conflict, counsel may be appointed from either Assigned Counsel Panels or from one of the legal aid providers.

Subsequent to the commencement of this proceeding, through discovery and representations made at oral argument, it has become evident that the City's ultimate goal is to have Legal Aid serve as the primary provider of conflict defense counsel. Petitioners claim that the City's new plan violates County Law § 722 and Municipal Home Rule Law § 11 (1) (e). I agree.

County Law § 722 was originally enacted in 1965. It directed the City to place in operation a plan for providing counsel to persons charged with a crime who are unable to afford their

own lawyers. The plan is subject to the requirement that the City provide for legal representation through one of four alternatives set forth in the statute (*see* County Law § 722).

Those alternatives, as they are set forth in the current version of County Law § 722, which was amended in June 2010, are: (1) a public defender; (2) counsel furnished by a private legal aid bureau or society, such as the Legal Aid Society (intervenor-respondent in this proceeding); (3) counsel furnished pursuant to "a plan of a bar association" whereby "the services of private counsel are rotated and coordinated by an administrator" (18-B Panels) or "such representation is provided by an office of conflict defender"; or (4) any combination of the foregoing options (*see* County Law § 722 [1]-[4]). The statute further provides, with respect to the appointment of conflict counsel, that where the city has not placed in operation a plan conforming with subdivision (3) or subdivision (4) of County Law § 722 and a judge "is satisfied that a conflict of interest prevents the assignment of counsel pursuant to the plan in operation," the judge may assign any attorney (§ 722 [4]).

In 1965, then-Mayor Wagner issued New York City Executive Order No. 178, by which the City established an indigent defense plan that was a Combined Option Plan pursuant to County Law § 722 (4). In conjunction with the issuance of Executive Order No. 178, the county bar associations (County Bars) and the Association of the Bar of the City of New York devised the bar plan component (the 1965 Bar Plan) of the Combined Option Plan. Under the Plan, Legal Aid was designated as the primary provider of indigent defense services in the City's criminal courts (pursuant to County Law § 722 [2]), and a procedure was established for using panels of private attorneys (18-B Panels) where the court determined that counsel other than Legal Aid was required either because there was a conflict or for any other good cause, or because the crime charged was punishable by death or life imprisonment (pursuant to County Law § 722 [3]).

In January 2010, the CJC revised title 43 of the Rules of the City of New York to add chapter 13. The new chapter included a provision that specifically provided for the City's direct appointment of "alternate providers" for the provision of conflict defense services, as "selected by the CJC through the City's procurement process" (43 RCNY 13-03). Respondents issued a Request for Proposals (RFP) by which the CJC proposed to award contracts for the provision of representation in conflict

cases (a role then solely served by the 18-B Panels). Subsequently, the Mayor issued New York City Executive Order No. 132 of 2010, which repealed Executive Order No. 178 (the 1965 order establishing the Indigent Defense Plan) and promulgated a new system for the provision of indigent defense counsel.

Significantly, while Executive Order No. 132 indicated that respondents intended to continue with the Combined Option Plan, using elements of both County Law § 722 (2) and (3), a second addendum to the RFP issued by the CJC contemporaneously with Executive Order No. 132 indicated to the contrary.[1] The second addendum provided, as relevant here:

"As may be seen, section 722 provides four alternative means that may be chosen by a locality for the provision of indigent legal services. One of those alternatives, set forth in subdivision three, is the adoption of a bar association plan for the rotation of legal services among private counsel. However, the City is in no way required, in formulating its plan for indigent legal services, to conform to the alternative provided in subdivision three.

"The City's current plan for indigent legal services, set forth in Executive Order No. 132, and in chapter 13 of Title 43 of the Rules of the City of New York, conforms to subdivision two of section 722, which provides for legal representation in criminal proceedings by 'a private legal aid bureau or society designated by the [City].' This is entirely in accordance with the requirements of section 722. The City's previous plan for the provision of indigent legal services, explicitly repealed by Executive Order No. 132, relied on services provided pursuant to the plan of a local bar association. *That plan is no longer in effect*" (emphasis added).

Petitioners commenced this proceeding seeking declaratory and injunctive relief pursuant to CPLR article 78 in June 2010. They alleged, among other things, that due to respondents' abandonment of the 1965 Bar Plan and decision to rely solely on County Law § 722 (2), respondents had automatically shifted responsibility for the provision of conflict counsel from 18-B Panel attorneys to individual attorneys assigned by the judi-

---

1. The City asserts that some of the statements in the second addendum were incorrect.

ciary pursuant to County Law § 722 (4), because, by operation of the statute, where there is no Combined Plan (under section 722 [4]), or plan solely under County Law § 722 (3), assignment of conflict counsel is the responsibility of the judiciary.

The City, apparently realizing that in order to claim it had a Combination Plan it would have to repeal the revocation of the 1965 Bar Plan, acted to resurrect the Bar Plan by issuing New York City Executive Order No. 136 of 2010, entitled "Repeal of Prior Executive Orders Relating to the Indigent Defense Plan for the City of New York." Executive Order No. 136, the repeal of the revocation, provides, in pertinent part, that whereas the CJC had promulgated rules (set forth in chapter 13 of title 43 of the Rules of the City of New York) that established a plan for representation of indigent defendants,

> "Executive Order No. 132 of 2010 and Executive Order No. 118 of 2008,[2] both entitled 'Indigent Defense Plan for the City of New York,' are hereby repealed. Further, Executive Order No. 178 of 1965, entitled 'Furnishing Counsel to Indigent Criminal Defendants Within the City of New York,' is hereby repealed, *except that Criminal Defense Panels created under the authority of Executive Order 178 of 1965 and pursuant to the plan submitted by bar associations in accordance with subdivision 3 of section 722 of the County Law shall continue to exist and shall be administered in accordance with the rules of the Appellate Division, First and Second Judicial Departments*" (emphasis added).

Notably, under the purported "Bar Plan" that the City argues has been incorporated into its new plan, the 18-B Panel attorneys are no longer the designated conflict counsel, as they were under the 1965 Bar Plan. While Executive Order No. 136 retains the Criminal Defense Panels created in 1965 "pursuant to the plan submitted by bar associations," the "Bar Plan" described by chapter 13 was formulated by respondents, not by the bar associations.

The City's Bar Plan is markedly different from the version devised and approved by the County Bars in 1965. Petitioners stress that the County Bars were all signatories to the 1965 Combined Option Plan and the 1965 Bar Plan, and that they

---

**2.** New York City Executive Order No. 118 of 2008 had also repealed Executive Order No. 178 of 1965.

have not agreed with the recent effort by the City to modify the 1965 Bar Plan component of the Combined Option Plan. In fact, the County Bars have expressly objected to the alleged "Bar Plan" and to the City's attempt to unilaterally use fragments of the 1965 Bar Plan while discarding significant aspects of it in an effort to create a Combined Option Plan.

While the majority minimizes the differences between the original 1965 Bar Plan and the "Bar Plan" currently proposed by the City, the differences are material. For example, the County Bars' original 1965 plan provides that The Legal Aid Society is to be the primary provider of representation and 18-B Panel attorneys are to be conflict counsel. The 1965 plan does not permit the City to assign conflict cases to institutional providers—all conflict cases are to be assigned to 18-B Panel attorneys. The new plan states that the City will make direct appointment of conflict counsel, which will be alternative providers selected through a procurement process (43 RCNY 13-03). This is clearly a sea change, not merely a rational supplement to the original 1965 plan as found by the majority, and is proof alone that the City's plan is not the 1965 Bar Plan.

The majority quotes from a decision issued in *New York County Lawyers' Assn. v Bloomberg* (2011 WL 4444185, 2011 US Dist LEXIS 112929 [SD NY 2011]), where, in dismissing causes of action brought by plaintiffs for violations of the Sixth, Eighth and Fourteenth Amendments to the United States Constitution based on lack of standing, Judge Batts wrote that the only actual change under the City's plan is that conflict cases are no longer automatically assigned to the 18-B Panels, and that there are no other changes to the rights and responsibilities of the County Bars with respect to the administration of the Panels. I disagree with Judge Batts's assessment that this is the only change.

While the County Bars' original 1965 plan provides that the judiciary is to decide whether a conflict exists, under the City's plan, the institutional provider has the authority to accept or decline a representation. The majority is incorrect in stating that the 1965 Bar Plan did not contain a provision regarding the supervision of conflict determinations. The 1965 Bar Plan states as follows:

"I. The Legal Aid Society

"Under this Plan, whenever a determination has been made by a court that a defendant is entitled to

representation under Article 18-B of the County Law, the court shall designate and appoint the Attorney-In-Charge of the Criminal Courts Branch of the Legal Aid Society as the attorney of record for the defendant in all cases, unless:

"1) the court deems the assignment of other counsel to be required in the interest of justice because of either a conflict of interest or any other good cause, in which event the court shall appoint counsel to be designated by the appropriate Administrator from the appropriate panel as hereinafter provided . . . ."

The City's plan substitutes institutional providers for some 18-B Panel lawyers, and transfers the authority to decide whether a conflict exists from the judiciary to the institutional providers. This is a considerable change in the way conflicts are handled.

Furthermore, the City's plan changes the management structure of the Bar Panels. Under the 1965 Bar Plan, each bar association submits a list of qualified attorneys to an administrator or administrators appointed by the First and Second Departments, and upon receipt of the list, the administrator prepares panels from which assignments are made. The City of New York's only involvement in the management of the panels is that it pays the salaries of the administrators and staff. The City's plan creates an "Office of the Assigned Counsel Plan" (OACP), which is an office of the City, "responsible for management of the City's Criminal Defense Panels" (43 RCNY 13-01).

While the City and Legal Aid point out that the City's plan calls for the continued involvement of administrators from the First and Second Departments in that the OACP is overseen by two administrators in consultation with the Presiding Justices of the First and Second Departments, the salient point is that there were no provisions under the 1965 Bar Plan—the only Bar Plan that was formulated and approved by the County Bars—for an office of the Mayor to oversee the panels. I note that the majority has adopted the opinion expressed by the City in its brief that the City's plan to oversee this process is designed to avoid favoritism and nepotism, and observe that the majority is engaging in the type of merit review of the plan that it emphasizes is not the province of this Court.

Additionally, the City's plan does not include any provision for the County Bars' continued participation in the attorney

screening process for the panels, but instead replaces the County Bars' screening with "Screening or Advisory Committees" appointed by the Appellate Division (43 RCNY 13-01). Although respondents stress that the advisory committees already exist, this does not respond to petitioners' point that the City's plan has no provision to ensure the County Bars' continued participation in the attorney screening process.

In denying petitioners' challenge to the City's plan, the motion court's rationale was based on the premise, urged by the City and Legal Aid, that the new plan will be a combination plan pursuant to County Law § 722 (4), as it has been in the past. However, this was an incorrect assumption. Petitioners stress that there is no "plan of a bar association," as contemplated by County Law § 722 (3), because the bar associations have not approved the City's plan, which retains some portions of the 1965 Bar Plan but otherwise materially deviates from that plan. There is no dispute that the County Bars did not author, formulate, or agree to this new version of the Bar Plan. At bottom, although I disagree with the majority as to whether the changes to the 1965 Bar Plan are material, no matter how we characterize the changes, the ineluctable reality is that a "Bar Plan" that has not been adopted, but instead has been rejected by the bar associations, is not "a plan of a bar association" as contemplated by County Law § 722 (3). Calling it a plan of a bar association does not make it so. Despite the majority's repeated pronouncements that the City's plan is a bar plan, it is in fact a plan of the Mayor, the City and the CJC that has been imposed upon the County Bars and permits bar members to act as conflict counsel, not pursuant to a Bar Plan crafted by them, but in accordance with the City's vision and design.

The motion court observed that the County Bars had not adopted portions of the City plan, and held that the City has discretion under County Law § 722 to implement the plan without approval by the County Bars. The majority also holds that County Law § 722 imposes no obligation on the City to obtain County Bar approval of a section 722 (2) option. But that is not the issue; petitioners do not dispute that the City has the right to select freely from the planning options under the statute. Rather, the pertinent and dispositive point is that while the City has the discretion, without the approval of the County Bars, to implement a plan for indigent defense under any of the options set forth in County Law § 722, it certainly does not and

cannot have the discretion to implement a "plan of a bar association" as contemplated by the statute, without the involvement and agreement of the bar associations.

Because there is no plan of a bar association, and there is no authority in the statute for the City to promulgate a plan of a bar association and impose that plan upon a bar association, it follows that the City's plan cannot be a combination of subdivision (2) (representation by institutional providers) and subdivision (3) (representation by counsel furnished pursuant to a plan of a bar association). This conclusion is reached upon consideration of the statute and the 1965 Bar Plan, and not, as intimated by the majority, any assessment of the wisdom or prudence of the City's plan or an exercise in judicial legislation under the guise of interpretation. I have engaged in a straightforward analysis of the meaning and intent of County Law § 722, and reviewed the various City enactments and the 1965 Bar Plan. On the other hand, the majority's conclusion that the City's revised plan is a valid section 722 (4) combination plan, notwithstanding the clear evidence that the 1965 Bar Plan has been largely eviscerated by the City's plan and that there is currently no Bar Plan approved by the County Bars as is required for such a combination plan, defies logic.

The City's plan thus falls under County Law § 722 (2). In that circumstance, section 722 (4) provides that a judge may appoint conflict counsel. The City's plan to appoint Legal Aid as conflict counsel, and, in so doing, bypass all judicial involvement in the appointment of conflict counsel, is not authorized by the statute. I am unpersuaded by respondents' argument, adopted by the majority, that the statute does not distinguish between conflict cases and all other cases, and that the City therefore has the authority to appoint conflict counsel by any method it deems appropriate.

The majority asserts that even if I am correct that the revised plan must be analyzed as a section 722 (2) plan, my analysis under section 722 (4) is flawed, and that accordingly the section 722 (2) plan meets the statutory criteria of County Law § 722. I note that the City has not taken the position that its plan falls under section 722 (2), most likely in recognition that the current structure of its plan must be deemed to fall under section 722 (4) in order to be valid. Although the City has made the anemic argument that a judge would not be required to appoint conflict counsel where a county elects multiple institutional providers under section 722 (2), with one provider taking pri-

mary assignment and the second taking conflict assignment, the City's overarching argument here is that its plan is a viable plan under section 722 (4).

While the motion court and the majority are correct that County Law § 722 (2), pertaining to institutional providers, does not distinguish between conflict and nonconflict cases, the statute as a whole draws a sharp distinction between conflict and nonconflict cases, particularly as it pertains to the use of institutional providers, by providing that when the City has not placed in operation a combination plan or plan under subdivision (3)—in other words, where the City has a plan under subdivisions (1) or (2)—and there is a conflict, the judiciary may assign any attorney (§ 722 [4]). The motion court noted that the judiciary's authority under section 722 (4) to appoint conflict counsel would not be triggered where there was a combination plan under section 722 (2) and (3), implicitly recognizing that the judiciary assigns conflict counsel in other instances pursuant to County Law § 722.

Had the Legislature intended a private legal aid bureau to be an appropriate source of conflict counsel in a section 722 (2) plan, it would have said so, instead of providing for assignment of conflict counsel by the judiciary. In reading the statute as a whole, which the majority correctly points out is the proper method for construing legislative intent, there are three distinct subdivisions of the statute that refer to conflict cases—subdivisions (4) and (5), which refer to assignment of conflict counsel by the judiciary, and the recently revised subdivision (3), which pertains to representation pursuant to a plan of a bar association. Importantly, subdivision (3) was amended by the Legislature in June 2010 to add language referring to an office of conflict defender. County Law § 722 (3) (a) now reads:

> "Representation by counsel furnished pursuant to *either or both of the following:* a plan of a bar association in each county or the city in which a county is wholly contained whereby: *(i)* the services of private counsel are rotated and coordinated by an administrator, and such administrator may be compensated for such service; *or (ii) such representation is provided by an office of conflict defender"* (added language italicized).

While the majority points out that the Legislature did not act on a proposed 2011 amendment to clarify the language in section 722 (3), there are any number of reasons for the Legisla-

ture's failure to act, including considerations that have no bearing on the merit or utility of the proposed amendment. Our focus should be on the amendment that *was* passed, which, by adding language about an office of conflict defender to the subdivision pertaining to a plan of a bar association, links the concepts of conflict defender with representation pursuant to a bar plan. The majority misconstrues my opinion when it suggests that I am interpreting the statute to make a bar plan under section 722 (3) the sole mechanism for conflict defense, and thus engaging in impermissible judicial legislation. I acknowledge that the City could establish an office of conflict defender pursuant to section 722 (3) (a) (ii), and that alternatively the City could choose a combination plan of section 722 (1) and (2). I find that because the City has done neither, but instead has purportedly devised a combination plan of section 722 (2) and (3) that is in reality no such thing, the City's plan impermissibly crafts an alternative option for the assignment of conflict counsel that is not set forth in the statute. Accordingly, the plan violates Municipal Home Rule Law § 11 (1) (e), which prohibits the adoption of a local law which supersedes a state statute, if such local law "affects the courts" (*see Goehler v Cortland County*, 70 AD3d 57, 60 [2009]).

MOSKOWITZ and RICHTER, JJ., concur with ANDRIAS, J.; MAZZARELLI, J.P., and ABDUS-SALAAM, J., dissent in a separate opinion by ABDUS-SALAAM, J.

Order and judgment (one paper), Supreme Court, New York County, entered January 19, 2011, affirmed, without costs.