[764 NYS2d 100]

In the Matter of Keith Devlin et al., Appellants, v New York State Division of Housing and Community Renewal, Respondent, and 302 East 3rd Street Associates, LLC, Intervenor-Respondent.

First Department, September 16, 2003

**APPEARANCES OF COUNSEL**

*Jacob Frumkin* for appellants.

*Mary Elizabeth Lacerenza* of counsel (*Marcia P. Hirsch*, attorney), for respondent.

*James R. Marino* of counsel (*Kucker & Bruh, LLP*, attorneys), for intervenor-respondent.

### OPINION OF THE COURT

TOM, J.P.

Since we conclude that the determination of the New York State Division of Housing and Community Renewal (DHCR) cannot rationally be upheld, we reverse the order under review and annul that determination.

Petitioners are tenants of apartment 5D located in 302 East 3rd Street, an occupancy they commenced on May 10, 1996. The lease is not included in the record, although a rider incorporated in an exhibit indicates, in paragraph 5 (A), a legal rent of $1,950, but a discount to $1,200 if the tenants paid by the 15th day of each month. Elsewhere, though, paragraph 5 (C) indicates that renewal leases would employ the monthly base rent of $1,950 as the basis for increases. The prior tenant was one Teresa Clayton, whose rent was $673.33. The difference between the rents is significant and obvious.

The present tenants filed a rent overcharge complaint in March of 1999, positing that they had been signing illegal leases and renewals since 1996. The landlord countered that the rent was legal insofar as it was a "first rent," occasionally termed a "market rent," charged for a "newly-created unit." The landlord claimed to have substantially altered the unit, so that the unit leased to Clayton was effectively a different unit from that rented to present petitioners. Clayton rented an apartment consisting of one bedroom, one bathroom, one kitchen and one living room. However, 86 square feet had been removed from the bedroom of the apartment rented by petitioners, by means of relocating a wall, and had been added to the next-door apartment. The landlord claims that with this reconfiguration, a new apartment was effectively created so that the base rent applicable to the former apartment was no longer applicable to the new apartment. Certainly, a real wall was constructed between the adjoining apartments, and electrical service was moved from the old adjoining wall and relocated to the newly enlarged apartment next door. A fire escape also had to be extended to reach another window. The landlord relied on these structural changes in defending the rent overcharge proceeding. It should be noted that a one-bedroom apartment 5D still exists, although some of the space from its bedroom has been added to an existing room in the adjoining apartment.

By order dated October 29, 1999, DHCR's Rent Administrator found that the landlord, under these circumstances, was entitled to charge a "first rent," that the rent charged was lawful and that there had been no overcharge. Petitioners then filed a petition for administrative review (P.A.R.), arguing that a landlord may not effectively deregulate an apartment merely by shifting some of its space from it to an adjoining apartment. In its answer, the landlord noted a line of agency decisions that supported the apartment's first rent status. In its July 24, 2001 determination, the agency denied the P.A.R., in part on the basis of architectural plans submitted by the landlord that satisfied the agency's criteria for finding that the apartment had been significantly changed.

Ironically, by this device, DHCR was allowing the landlord to basically double or triple the rent, depending on how the baseline was calculated, while at the same time shrinking the apartment's square footage, a result that seems hard to reconcile with the regulatory goals. Although not presently before us, the question naturally arises whether the adjacent, benefitted apartment also will benefit from first rent treatment, at an even higher rent, so that by the expedient of moving a wall, the landlord would have effectively deregulated two apartments for which the rents are significantly multiplied. Although Administrative Code of the City of New York § 27-751 states that the minimum square footage for a habitable room is 80 square feet, the fact remains that apartment 5D remains a one-bedroom, and the adjoining apartment did not gain a new room, but only gained additional space in an existing room. In denying the CPLR article 78 petition, the motion court, in the judgment presently under review, also found that the prior apartment 5D no longer existed, but was replaced by a new apartment 5D, so that a rational basis existed for the agency determination.

This result is not only illogical, it is unreasonable in view of the goals of rent stabilization. We have previously noted that although the Rent Stabilization Code provides a mechanism whereby a landlord may seek a rent increase when an apartment is modified to substantially increase its space and for other improvements (9 NYCRR 2522.4 [a] [1]), the Code provides no "first rent" mechanism. This is only an administratively created policy which is implemented to address significant changes in a rent-stabilized apartment's perimeter walls (*Matter of 300 W. 49th St. Assoc. v New York State Div. of Hous. & Community Renewal, Off. of Rent Admin.,* 212 AD2d

250 [1995]) for which under various circumstances 9 NYCRR 2522.4 (a) (1) might be inapplicable. Rather, DHCR's policy was a means of acknowledging that significant alterations might simply eliminate any rational basis for carrying an apartment's rental history forward. We found that "the policy applies only when the perimeter walls of the apartment have been substantially moved and changed and where the previous apartment, essentially, ceases to exist, thereby rendering its rental history meaningless" (*id.* at 253). The test, then, is in two parts: reconfiguration plus obliteration of the prior apartment's particular identity. When such a structural recon-figuration results in "the creation of a new unit with completely different perimeter walls, there would be no rational method which DHCR could utilize to calculate the legal rent since the stabilized rent is based upon a continuous chain of rental his-tory" (*id.*). The illustrations we offered in that case were the conversion of a single two-bedroom apartment into two studio apartments, or, conversely, the consolidation of two smaller units into a single larger unit, so that the prior abodes were es-sentially unidentifiable within the new configurations. Then, "the rental history of the prior units would be inapplicable to the newly created apartment for the purposes of determining the stabilized rent as the former unit or units no longer remain" (*id.* at 254). Comparing those illustrations with the present facts, and in view of the relatively modest alteration of one perimeter wall in the present case, it cannot be said that former apartment 5D no longer exists; it has simply been shrunk, at the landlord's instigation. If we were to uphold DHCR's ruling, the ramifications would effectively vitiate a fundamental underpinning of our city and state rent regula-tion regime, that available housing units and their rents be maintained at a stable and predictable level. Moreover, to al-low a landlord to significantly increase the legal rent on a unit merely by the expedient of modifying the unit's dimensions in a minor manner would encourage subterfuges as a means of improperly manipulating rent stabilization. Such a result would threaten the stability of the regulatory system, so that we are concerned with more than just the occasional sham.

In *300 W. 49th St. Assoc.* we also noted the concern that the implementation of a first rent status for a particular unit should not be a device to frustrate the purposes of the Rent Stabilization Law.

Rent regulations were enacted in New York State by the Legislature in response to an emergency housing shortage af-

ter World War II which was caused, to a large extent, by the return of large numbers of war veterans. The Emergency Housing Rent Control Law (L 1946, ch 274) was passed into law in 1946 to provide property owners with a fair return for their investment and at the same time to provide affordable housing accommodations for the general population. All housing units completed prior to February 1, 1947 were subject to the Emergency Housing Rent Control Law.

The Rent Stabilization Law was enacted in 1969 as a result of the continuing housing emergency and the need to regulate dwelling units constructed after 1947. The law was designed: to encourage future housing construction by allowing owners reasonable rent increases; to prevent the exaction of "unjust, unreasonable and oppressive rents"; and "to forestall profiteering, speculation and other disruptive practices" in the housing market (Administrative Code § 26-501).

Moreover, in *300 W. 49th St. Assoc.*, we rejected as irrational the position that a first rent may be imposed simply as a consequence of the substantial remodeling of an apartment that remains essentially intact and for which the rental history retains relevance. Rather, we concluded that to allow a new, market-based rent to be charged when the unit is only renovated, albeit substantially, would contravene the goals of rent regulation as well as perversely undermine rent regulation by encouraging profiteering in and disruption of the consistently short supply of housing stock. That caution on the logical contortions to which a "first rent" policy might be subjected as landlords seek new means of evading rental limitations would seem especially apt in the present case. Although a perimeter wall has been moved, it cannot be said that a comprehensive regulatory regime should be jettisoned simply because a landlord wanted to move that wall. In a similar case where an apartment had actually been enlarged before a landlord sought "first rent" status, Appellate Term aptly made the point that "[i]t is manifest that what occurred here was not the creation of a new apartment unit, but an enlargement of an existing apartment which did not require rehabilitation or extensive reconfiguration" (*Roker Realty Corp. v Gross*, 163 Misc 2d 766, 768 [1995]). It remains to be seen in this case why the rehabilitation or reconfiguration was necessary. However, we need not reach that issue. It suffices that this was not the type of project for which we can allow a DHCR order, that myopically adhered to its own agency criteria while ignoring the consequences or even the larger logic of that result, to

effectively undermine the very statutory regime that it was charged with administering.

For these reasons, our usual deference to DHCR, regarding its administrative policies undertaken in furtherance of its statutory responsibilities, is insufficient to sustain its order in this case.

Accordingly, the judgment of the Supreme Court, New York County (William Wetzel, J.), entered March 6, 2002, which, insofar as appealed from as limited by petitioners' brief, denied their petition to annul the determination of respondent DHCR dated July 24, 2001, should be reversed, on the law, without costs, the petition granted and the matter remanded to DHCR for a determination of the tenants' rent overcharge complaint.

ANDRIAS, SULLIVAN, ROSENBERGER and FRIEDMAN, JJ., concur.

Judgment, Supreme Court, New York County, entered March 6, 2002, reversed, on the law, without costs, the petition granted, and the matter remanded to DHCR for a determination of the tenants' rent overcharge complaint.