(March 30, 2017)

■ BENJAMIN DIXON, Appellant, v 105 WEST 75TH STREET LLC et al., Respondents. [53 NYS3d 1]—

Orders, Supreme Court, New York County (Manuel J. Mendez, J.), entered April 13, 2015 and August 11, 2015, which, respectively, granted the landlord defendants' (landlord) motion to dismiss the complaint against them and for an award of attorneys' fees and costs, and, to the extent appealed from as limited by the briefs, denied plaintiff's motion to renew, modified, on the law, to declare that the apartment at issue is a legal apartment and no longer subject to rent stabilization, and to deny the motion for legal fees and costs, and otherwise affirmed, without costs.

The complaint in this case alleges that apartment 5B in the subject building, for which plaintiff has been charged market rent since he entered into a one year lease in May 2013, is subject to rent stabilization. The tenant who immediately preceded plaintiff also paid market rent. Prior to that, the apartment was registered with DHCR, with a legal regulated rent of $1,117.42 per month as of July 31, 2002, when, according to DHCR rent records, the apartment became vacant. Landlord asserts that it purposely kept the apartment vacant at that time, waiting until the apartment next door, 5A, also became vacant. When 5A became vacant, landlord commenced a project to add a penthouse to the building and connect it to 5A and 5B, thus creating twin duplex apartments. When plaintiff inquired as to why he was being charged market rate, given the regulated status of the apartment as of July 31, 2002, landlord informed him that the project to convert the unit to a duplex substantially changed the physical character of the apartment so as to entitle landlord to charge a market rate "first rent." Alternatively, landlord informed plaintiff, the costs of the renovation to the apartment were such that, applying one-fortieth of them to the regulated rent as allowed by the Rent Stabilization Code, brought the rent above the threshold necessary to permit high rent vacancy deregulation.

The complaint alleged that landlord was not entitled to first

rent for the apartment because, after the conversion to a duplex, the apartment retained the same number of rooms and bathrooms, the same kitchen, plumbing and heating system and electrical wiring, the same amount of useable square footage, and because there was no substantial increase or decrease in the outer perimeter of the apartment. Plaintiff further asserted that landlord did not obtain proper approvals for the renovation until three years after it began charging market rent, and fraudulently obtained a new certificate of occupancy for the building. Plaintiff also alleged that landlord did not expend sufficient funds on individual apartment improvements to justify an increase in the legal regulated rent warranting high rent vacancy deregulation; and that the majority of the work performed in the apartment consisted of repairs and maintenance, which did not qualify as individual apartment improvements under the Code. The first cause of action in the complaint sought a declaratory judgment that the apartment was illegal and that plaintiff had no obligation to pay rent. The second cause of action requested an injunction directing landlord to legalize the apartment. The third cause of action was for a declaratory judgment that the apartment was subject to rent stabilization. The fourth cause of action sought lease reformation and an injunction barring landlord from collecting rent in excess of the lawful stabilized rent. The fifth cause of action sought monetary damages for rent overcharges; and the sixth cause of action requested reimbursement of plaintiff's attorneys' fees and costs.

Landlord moved to dismiss the complaint pursuant to CPLR 3211 (a) (1) and (7), and for an award of legal fees and costs. In a supporting affidavit, defendant Nunzio Ruggiero, a principal of defendant 105 West 75th Street LLC, explained that after apartment 5A became vacant in September 2003, landlord decided to create an addition on the roof of the building to create two duplex apartments out of apartments 5A and 5B. An architect prepared plans, which were filed and approved by the Department of Buildings and the Landmarks Preservation Commission. A permit was issued for the new penthouse on the existing roof to be connected to the renovated apartments on the fourth floor of the building, where apartments 5A and 5B were located. In 2003 and early 2004, John & Joseph Bonanno Construction & Development Corp. (Bonanno) constructed the penthouse enclosure and connected it to the apartments, which were also renovated.

Ruggiero attached to his affidavit work permits issued by the DOB in 2003 and 2004 for the renovation of apartments 5A

and 5B, including the installation of new bathrooms and kitchens, and a staircase to connect to a new penthouse on the existing roof. Ruggiero also attached an invoice from Bonanno dated September 7, 2004, which described the work to be performed, including framing a new penthouse on the roof and a new bathroom, and negotiated checks from January 6, 2003 through September 7, 2004 to Bonanno totaling $184,000, which was exactly the amount on the invoice. In addition, Ruggiero attached to his affidavit an invoice dated February 11, 2004 from Vin-Ray Plumbing & Heating Co. for $25,000, along with checks totaling that amount, indicating that plumbing work was performed in various areas, including the penthouse floor.

In opposition, plaintiff submitted an affidavit in which he asserted that he was the senior cost manager at a global consultancy company that offered a range of services to the construction and property industry, was a member of the Construction Financial Management Association, and a chartered surveyor. Based on that experience, he opined that the rooftop structure was different from the structure in the approved plans, because the plans permitted a penthouse covering 18 feet of the roof, but the actual structure covered 35 feet, and the work was to be performed on apartments 4A and 4B, not 5B.

Plaintiff stated that contrary to industry practice, the construction contract did not detail the scope of work or break out the costs for each element of the work, the Bonanno invoice was not marked "paid in full," some of the services listed on the invoice could not be verified, and only three of the checks were paid on or after the date of the invoice. Plaintiff opined that, based on his professional experience and expertise, landlord did not spend $100,000 on renovations to the apartment.

In reply, landlord submitted the affidavits of tenants who occupied apartments 5A and 5B before the penthouse was added. The prior occupant of 5B averred that during her residency the premises she occupied consisted of a one-bedroom apartment on the top floor of the five-story building, with nothing above the apartment except for the roof. The former occupant of 5A stated that in 2002, when 5B became vacant, Ruggiero asked him to relocate so that a penthouse addition could be constructed on the roof, making 5A and 5B duplexes, and he agreed to move. He further asserted that the two penthouses on the roof, which did not previously exist, were constructed and connected to the apartments with internal staircases, increasing the size of each apartment.

Supreme Court granted landlord's motion to dismiss the complaint, and ordered an inquest as to the amount of reasonable costs and attorneys' fees incurred by landlord in defending the action. The court determined that the documentary evidence submitted by landlord refuted the allegations of the complaint and showed that the apartment was vacant prior to the renovations and that a newly created duplex apartment was constructed, which did not exist previously. The court found that the 2002 certificate of occupancy for the building showed that the building did not include rooftop living space, and that the work permits and subsequent certificates of occupancy demonstrated that additional living space was constructed, entitling landlord to "first rent," without rent stabilization restrictions. The court further found that the invoices and checks payable to Bonnano and the plumbing contractor showed that landlord spent approximately $200,000 for the renovation, which also entitled it to increase the rent by one-fortieth of the cost per apartment. The court noted that this increased the legal rent to well over $2,000 per month, the threshold amount required to remove an apartment from rent stabilization. Finally, the court awarded landlord its legal fees and expenses pursuant to a provision in the lease that requires plaintiff to reimburse landlord's "legal fees and disbursements for legal actions or proceedings brought by [landlord] against [plaintiff] because of a Lease default by [plaintiff] or for defending lawsuits brought against [plaintiff] because of [plaintiff's] actions."

Plaintiff moved to renew and reargue. He asserted that the court did not properly credit his expert affidavit, that a financial statement of landlord's failed to establish an expenditure of $200,000 on major capital improvements or renovation, and that the DOB had received complaints about, and issued violations concerning, the penthouse. The court denied the motion, finding that none of the evidence presented on the motion was newly discovered, nor did plaintiff establish that the court misapprehended or overlooked any issue of fact or law.

Dismissal of a complaint pursuant to CPLR 3211 (a) (1) is only appropriate where the documentary evidence presented conclusively establishes a defense to the plaintiff's claims as a matter of law (*Leon v Martinez*, 84 NY2d 83, 88 [1994]). The documents submitted must be explicit and unambiguous (*see Bronxville Knolls v Webster Town Ctr. Partnership*, 221 AD2d 248, 248 [1st Dept 1995]). In considering the documents offered by the movant to negate the claims in the complaint, a court must adhere to the concept that the allegations in the

complaint are presumed to be true, and that the pleading is entitled to all reasonable inferences (*see Leon*, 84 NY2d at 87-88). However, while the pleading is to be liberally construed, the court is not required to accept as true factual allegations that are plainly contradicted by documentary evidence (*Robinson v Robinson*, 303 AD2d 234, 235 [1st Dept 2003]).

The documentary evidence submitted by landlord was designed to refute plaintiff's claim that the conversion of the apartment into a duplex did not meet the criteria for first rent or high rent vacancy deregulation. A landlord may charge first rent, pursuant to the Rent Stabilization Code, where the landlord "substantially alters the outer dimensions of a vacant housing accommodation, which qualifies for a first rent equal to or exceeding the applicable amount qualifying for deregulation" (9 NYCRR 2520.11 [r] [12]) which in this case, was "$2,000 or more per month" (9 NYCRR 2520.11 [r] [4]). Stated somewhat differently, first rent is permitted "when the perimeter walls of the apartment have been substantially moved and changed and where the previous apartment, essentially, ceases to exist, thereby rendering its rental history meaningless" (*Matter of 300 W. 49th St. Assoc. v New York State Div. of Hous. & Community Renewal, Off. of Rent Admin.*, 212 AD2d 250, 253 [1st Dept 1995]). This Court has described the test for whether alterations qualify for first rent as "reconfiguration plus obliteration of the prior apartment's particular identity" (*Matter of Devlin v New York State Div. of Hous. & Community Renewal*, 309 AD2d 191, 194 [1st Dept 2003], *lv denied* 2 NY3d 705 [2004]).

In *Matter of 300 W. 49th St. Assoc.*, this Court offered examples of the types of alterations contemplated by the policy—namely, a two-bedroom apartment being split into two studio apartments, or two units being combined into one larger apartment (212 AD2d at 253-254). In both that case, where the landlord substantially remodeled the apartment but it remained "essentially intact" (*id.* at 254), and *Devlin*, where the landlord relocated a wall so as to remove 86 square feet of space and add it to the neighboring apartment (309 AD2d at 192), this Court found that the landlord was not entitled to charge first rent. In contrast, the landlord was found to be entitled to charge first rent where it made "significant dimensional changes to a single-floor apartment to create a new (duplex) apartment prior to tenant's occupancy" (*446-450 Realty Co., L.P. v Higbie*, 30 Misc 3d 71, 73 [App Term, 1st Dept 2010]).

Even if a landlord does not perform the type of alterations

necessary to charge first rent, it may escape rent regulation if it expends enough money renovating the apartment such that one-fortieth of the expenditure, added to the last regulated rent, brings the rent above the $2,000 threshold. To qualify, the work must fall under one of the categories described in 9 NYCRR 2522.4, which includes a "substantial increase . . . of dwelling space" (9 NYCRR 2522.4 [a] [1]).

Landlord satisfied its burden of demonstrating that it made the necessary improvements to qualify for first rent, since it established that it substantially altered the character of the apartment by connecting it to the new penthouse. It did this by submitting the approved plans for the addition, the work permit for the project, the certificates of occupancy from before and after the work, which reflect the absence of the penthouse in 2002 and its presence in 2007, and the contractors' invoices and proofs of payment. In response, plaintiff points to various infirmities in the individual pieces of evidence. For example, he notes certain discrepancies in the description of the apartments on the different certificates of occupancy, and claims that Ruggiero was not qualified to "self-certify" the certificates of occupancy. He further questions the probative nature of the contractors' documents, arguing that Bonnano's invoice does not break out the cost for each item of work and postdates the move-in date for plaintiff's predecessor, that the checks do not state the apartment where the work that is being paid for was done, or the specific work being paid for, and that several of the checks were issued after plaintiff's predecessor took occupancy.

We find that none of the documents considered by Supreme Court was, as plaintiff claims, inauthentic. Moreover, they demonstrate in an unambiguous and conclusive fashion the basic premise that landlord made a significant change to the living space, thus satisfying CPLR 3211 (a) (1) and the substantive statutory provisions that led to the rent increase. The plans clearly show the addition of a penthouse, to be attached to the existing apartment with a staircase. This is far from de minimis, and clearly constitutes a "reconfiguration plus obliteration of the prior apartment's particular identity" within the meaning of Devlin (309 AD2d at 194). The certificates of occupancy and contractors' documents confirm that the work was done.

Plaintiff's arguments attacking the documents are unavailing. That the certificates of occupancy submitted by defendants are inconsistent in their descriptions of the number of units in the building does not lead to the conclusion that the work was

insufficiently significant for purposes of first rent. Viewed together, Bonanno's invoice and the contractors' checks establish to our satisfaction that landlord commissioned and paid for the work that is reflected in the new certificate of occupancy. Again, the issue is whether landlord did work that changed the identity of the living space in the apartment, and those documents collectively establish that it did. Further, we are satisfied that the apartment was vacant at the time of the construction work, based on the DHCR registration records before us and the very fact that it would have been impractical to perform a project of that magnitude if the apartment were occupied.

We similarly find that the documents submitted by landlord established that it properly claimed a rent increase based on the costs of its project to substantially increase the space in the apartment. The contractors' documents (the Bonnano invoice in particular) establish that the essence of the work was to expand the apartment by building the penthouse and combining it with the existing space. Further, the bulk of the work described in the invoice, even if it did not necessarily relate to the apartment expansion, plainly qualifies as improvements. Accordingly, the court was justified in finding that, since the same amount of work was necessary in each apartment, one-half of the costs were attributable to apartment 5B, thus bringing it over the deregulation threshold. The court was also correct in not requiring that landlord delineate between improvements and repairs (see Jemrock Realty Co. LLC v Krugman, 72 AD3d 438, 440 [1st Dept 2010], lv dismissed 15 NY3d 866 [2010]).

We respectfully disagree with the dissent's view that landlord was required to show conclusively what the apartment looked like before the renovations were performed. The approved plans and certificates of occupancy establish quite clearly that the work resulted in a substantial reconfiguration of the apartment and expansion of the space such that it qualified for first rent. Whether the term "penthouse" has a definitive meaning among architectural and building professionals, it is evident that the new structure added significant space to the apartment and changed its identity in a substantive way. Nor do we think that landlord was required to authenticate the contractors' documents, where not even plaintiff appeared to question their authenticity, as opposed to their probative value, and where those documents merely bolstered the certificates of occupancy and DOB-approved plans, which were "essentially undeniable" and thus qualified as documentary evidence for

purposes of CPLR 3211 (a) (1) (*Fontanetta v John Doe 1*, 73 AD3d 78, 84-85 [2d Dept 2010] [internal quotation marks omitted]). The Bonnano invoice clearly refers to apartments 5A and 5B, thus negating the dissent's concern that some of the itemized work was for other units or common spaces. In addition, as noted above, the work as contemplated by landlord was to be equally distributed between apartment 5A and 5B, and there is no reason to question why the contractors' work would not have reflected that intent. Regarding the dissent's concern whether any new equipment replaced similar equipment that was within the latter's useful life or that 9 NYCRR 2522.4 (a) (13) precluded landlord's entitlement to a rent increase, we simply note that plaintiff does not appear to have raised these arguments on appeal.

We further disagree that the fact that the certificates of occupancy and work permits offered by landlord may not have been certified is of any moment. Again, plaintiff offers no reason for us to doubt their basic authenticity. In addition, *Morton v 338 W. 46th St. Realty, LLC* (45 Misc 3d 544 [Civ Ct, NY County 2014]), on which the dissent relies, is inapposite. In that case, the issue before the court was whether the landlord knowingly applied for an exemption for rent regulation to which it was not entitled (*id.* at 547). The basis for the claimed exemption was a substantial rehabilitation of the building pursuant to 9 NYCRR 2520.11 (e) (*id.* at 547-548). The court noted that the certificate of occupancy presented by the landlord indicated that the number of apartments in the building had doubled, but that "[w]ithout knowing the scope of the work performed," it could not determine whether the landlord's predecessor (which had done the work) may have had a good faith belief that it was entitled to an exemption (*id.* at 553). Here, of course, we know the scope of the work based on the approved plans and the contractors' documents.

Finally, under paragraph 19 (A) (5) of the lease, plaintiff was required to reimburse the landlord defendants' legal fees and expenses only where the action was brought based on his default or the costs were incurred in defending lawsuits because of his actions. This action does not fit into either category. As a result, the court improperly awarded landlord its legal fees and costs. Concur—Acosta, J.P., Mazzarelli, Manzanet-Daniels and Webber, JJ.

Gesmer, J., dissents in part in a memorandum as follows: I agree with the majority's finding that the landlord defendants (landlord) are not entitled to legal fees and costs, and join in that portion of the memorandum. However, because I do not

agree that the landlord submitted sufficient documentation in admissible form (*Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]; *Advanced Global Tech., LLC v Sirius Satellite Radio, Inc.*, 44 AD3d 317, 318 [1st Dept 2007]) to "utterly refute[ ]" plaintiff's claims and establish a defense as a matter of law (*Goshen v Mutual Life Ins. Co. of N.Y.*, 98 NY2d 314, 326 [2002]), I respectfully dissent from the balance of the majority opinion. Specifically, the vast majority of the documents on which the landlord relies are neither certified (CPLR 4518 [c]), identified as business records (CPLR 4518 [a]), nor otherwise authenticated by a competent witness (*AQ Asset Mgt. LLC v Levine*, 128 AD3d 620, 621 [1st Dept 2015] [unsworn email list not authenticated by the defendants' affiants was inadmissible hearsay]).

The landlord is the owner of a building at 105 West 75th Street. It is undisputed that it registered apartment 5B in the building with the Division of Housing and Community Renewal (DHCR) as rent stabilized through 2004, with the last regulated rent listed as $1,117, and with the apartment registered as "vacant" in 2003 and 2004. It is further undisputed that the landlord did not register the apartment with the DHCR again until August 2014.

On April 4, 2013, plaintiff entered into a one-year lease for the apartment at a monthly rent of $3,200. The lease provides that the apartment is not subject to rent stabilization. On March 1, 2014, he signed a one-year renewal, titled "decontrolled apartment lease renewal" (capitalization omitted).

In or about June 2014, plaintiff obtained the rental history for the apartment from the DHCR. On or about August 14, 2014, plaintiff, through counsel, wrote to the landlord requesting that it provide him with a rent-stabilized lease and reimburse him for rent paid in excess of the regulated rent in effect on the date of the last registration filed with the DHCR. On or about August 18, 2014, the landlord filed a DHCR registration form alleging that the apartment is exempt from rent stabilization due to "[m]ajor capital improvements" and a "new duplex apartment," explaining that a "penthouse and terrace [were] added to [the] apartment making it a new duplex apartment with terrace entitling owner to a first rent."

On October 7, 2014, plaintiff commenced this action, in which he claims, inter alia, that "the extension purportedly added to the subject apartment already existed in the apartment before the alleged renovations and therefore did not result in increased dwelling space or improvements." In his affidavit, plaintiff claims that the existing rooftop structure differs from

the structure described in the landlord's plans. Plaintiff seeks a declaratory judgment that the apartment is illegal because the certificate of occupancy in effect at the time listed 9 units, rather than 10; an order directing the landlord to legalize the apartment by amending the certificate of occupancy; a declaratory judgment that the apartment is rent stabilized, and that the rent charged exceeds the lawful rent; an order directing the landlord to offer him a rent-stabilized lease at the legal rent, and to register the apartment with the DHCR; money damages for rent overcharge; and counsel fees.

In response, on or about December 9, 2014, the landlord filed a motion to dismiss the complaint based on documentary evidence. In support of the motion, the landlord submitted only two certified documents: (1) the Landmarks Preservation Commission's December 10, 2002 Certificate of No Effect, permitting construction of a "one-story rooftop addition . . . ; [the] install[ation of] a glass skylight and metal railing at the roof; and the demolition and construction of interior non-bearing partitions and finishes"; and (2) architectural drawings of the "4th floor plan" and "penthouse & roof plan" (capitalization omitted), which do not show clearly how the configuration of the apartment allegedly changed, and which plaintiff alleges do not conform to the actual dimensions of the apartment as it exists today. Although the landlord did not authenticate the remaining documents it attached, plaintiff does not dispute the authenticity of the DHCR printout showing the apartment's rental history, his lease and renewal, and the August 14, 2014 DHCR registration statement. He also acknowledges that the certificate of occupancy existing at the time he moved in listed the building as containing 9 units, when, in fact, there are 10.

On April 13, 2015, the motion court issued its decision and order on the landlord's motion, finding that the unit is "a newly created duplex apartment which did not previously exist," and that the landlord spent approximately $200,000 in renovation costs, entitling it to raise the legal rent to over $2,000 per month, the threshold for rent deregulation for apartments that were vacant prior to June 24, 2011 (9 NYCRR 2520.11 [r] [4]). The motion court based its finding on the certificates of occupancy issued before and after renovation of the apartment, Department of Buildings work permits, and contractor's and plumber's invoices and canceled checks submitted by the landlord. None of these documents was certified or otherwise authenticated.

On June 23, 2015, plaintiff moved to renew and reargue, and for a stay of the Housing Court holdover proceeding the

landlord had commenced against him, leave to file an amended complaint, sanctions, and an order directing that the DHCR decide the rent-stabilization status of the apartment. In his motion, plaintiff argued that the landlord had not submitted sufficient documentary evidence to prove its defenses as a matter of law, and claimed that the Department of Buildings had issued violations against the landlord and determined that the certificate of occupancy was issued in error because the roof structure does not comply with the plans submitted and violates provisions of the Multiple Dwelling Law.

On August 11, 2015, the motion court issued its decision and order denying plaintiff's motion in all respects.[1] He now appeals from both orders of the motion court.

A motion for dismissal based on documentary evidence under CPLR 3211 (a) (1) "may be appropriately granted only where the documentary evidence utterly refutes plaintiff's factual allegations, conclusively establishing a defense as a matter of law" (*Goshen*, 98 NY2d at 326). Documentary evidence sufficient for dismissal under CPLR 3211 (a) (1) must be in admissible form (*Advanced Global Tech., LLC*, 44 AD3d at 318).

Section 2522.4 (a) (1) of the Rent Stabilization Code, cited by the majority, provides: "An owner is entitled to a rent increase where there has been a substantial increase, other than an increase for which an adjustment may be claimed pursuant to paragraph (2) of this subdivision,[2] of dwelling space or an increase in the services, or installation of new equipment or improvements, or new furniture or furnishings, provided in or to the tenant's housing accommodation . . . . In the case of vacant housing accommodations, tenant consent shall not be required." Where the landlord meets its burden (*Matter of West Vil. Assoc. v Division of Hous. & Community Renewal*, 277 AD3d 111, 113 [1st Dept 2000]), it may increase a tenant's rent by one-fortieth of the cost of the "substantial increase" created prior to September 24, 2011, exclusive of finance charges (9 NYCRR 2522.4 [a] [1], [4]). A landlord who is entitled to a rent increase based upon the installation of new equipment, or new furniture or furnishings is not entitled to a further rent increase "based upon the installation of similar equipment, or new furniture or furnishings within the useful life of such new

---

1. The landlord states in its appellate brief that plaintiff has since been evicted from the apartment. Since that is outside the record, we cannot consider it.

2. 9 NYCRR 2522.4 (a) (2) permits landlords to "file an application" for rent increases based on specified building wide "major capital improvement[s]" under certain circumstances (9 NYCRR 2522.4 [a] [2] [i]).

equipment, or new furniture or furnishings" (9 NYCRR 2522.4 [a] [11]). In addition, a landlord's request for a rental adjustment under this section shall not be granted if, inter alia, there exist any "immediately hazardous violations of any municipal, county, State or Federal law which relate to the maintenance of such services" (9 NYCRR 2522.4 [a] [13]). Furthermore, "[t]he determination of the appropriate adjustment of a legal regulated rent shall take into consideration all factors bearing on the equities involved, subject to the general limitation that the adjustment can be put into effect without dislocation and hardship inconsistent with the purposes of the RSL, and including as a factor a return of the actual cost to the owner, exclusive of interest or other carrying charges, and the increase in the rental value of the housing accommodations" (9 NYCRR 2522.4 [a] [6]). The "substantial increase" provision is not the same as the much narrower policy governing the determination of a landlord's right to charge a "first" or "free market rent." The latter is "an administratively created policy implemented by DHCR in its capacity as the administrative agency which regulates residential rents. The policy applies only when the perimeter walls of the apartment have been substantially moved and changed and where the previous apartment, essentially, ceases to exist, thereby rendering its rental history meaningless" (*Matter of 300 W. 49th St. Assoc. v New York State Div. of Hous. & Community Renewal, Off. of Rent Admin.*, 212 AD2d 250, 253 [1st Dept 1995]). The landlord has the burden to show "reconfiguration plus obliteration of the prior apartment's particular identity" (*Matter of Devlin v New York State Div. of Hous. & Community Renewal*, 309 AD2d 191, 194 [1st Dept 2003], *lv denied* 2 NY3d 705 [2004]; *see also Matter of Myers v D'Agosta*, 202 AD2d 223, 224 [1st Dept 1994] [noting DHCR's 1987 ruling to this effect]).

Here, the landlord has not submitted sufficient documentation in admissible form to establish conclusively, as a matter of law, that it is entitled to a rental increase and deregulation based on either a "substantial increase" or reconfiguration and obliteration of the prior apartment.

There are at least three problems with the landlord's claim to a rent increase based on an alleged "substantial increase." First, it has offered no documentation establishing the configuration of the apartment prior to renovation, making it impossible to know whether or how the apartment's living space has increased. There is no affidavit by anyone with personal knowledge as to the original and post-construction configurations. Although the landlord repeatedly refers to the

rooftop structure as a "penthouse," it is not clear from any of the documents proffered what rooftop structure was added, since plaintiff claims that the existing rooftop structure does not match the structure outlined in the plans.[3] Second, the copies of the contractor's and plumber's invoices and canceled checks are not certified or otherwise authenticated. There is no affidavit by anyone that the invoices were "made in the regular course of . . . business and that it was the regular course of such business to make [them], at the time of the act, transaction, occurrence or event, or within a reasonable time thereafter" (CPLR 4518 [a]). Finally, even if these documents were in admissible form, they do not provide enough documentation to justify a rent increase. The unauthenticated bill from Bonanno Construction for a non-itemized total of $184,000 lists the "[d]eposit[ ]" paid as "0," yet all but three of the unauthenticated canceled checks (totaling just $26,000) submitted by the landlord predate the bill. Moreover, it is not clear from the documents submitted what sums are attributable to the subject apartment, rather than the apartment next door, which the landlord claims it was also renovating at the same time, or, for that matter, to work on other units or common spaces of the building. Nor do these documents establish whether any of the equipment installed replaced similar equipment that was "within the useful life of such . . . equipment" (9 NYCRR 2522.4 [a] [11]). Furthermore, plaintiff claims on his motion to renew and reargue that the work was conducted in violation of the Multiple Dwelling Law, raising a question as to whether the landlord is barred from collecting an increased rent under the Rent Stabilization Code (9 NYCRR 2522.4 [a] [13]).

The landlord's claim of entitlement to a "first rent" is similarly problematic. Indeed, the landlord's counsel concedes that "the perimeter of the existing 5th floor space was not altered."[4] Furthermore, the copies of the certificates of occupancy and DOB work permits relied upon by the motion

<hr>

3. With its reply papers, the landlord submitted photographs purporting to show portions of the apartment and the affidavit of Carl Kissin, who claims he resided in the neighboring apartment prior to construction. However, the photographs are not properly authenticated in that no person with personal knowledge identifies them as an accurate representation of the subject apartment. Moreover, an affidavit that merely asserts the inaccuracy of plaintiff's claims, much less one that does not make any claims about the subject apartment, is not "documentary evidence" for CPLR 3211 purposes (*Solomons v Douglas Elliman LLC*, 94 AD3d 468, 469 [1st Dept 2012]). Similarly, the landlord's counsel's reply affirmation is also insufficient to prove the claims made about the work performed.

4. *446-450 Realty Co., L.P. v Higbie* (30 Misc 3d 71, 73 [App Term, 1st Dept 2010]), cited by the majority, provides no facts, other than to state that

court were not certified, and were thus an improper basis for dismissal based on documentary evidence (CPLR 4518 [c]; *see also Morton v 338 W. 46th St. Realty, LLC*, 45 Misc 3d 544, 553 [Civ Ct, NY County 2014] [the court could not determine from certificate of occupancy the scope of the work and whether the work performed qualified the unit for "first rent" status]). In addition, plaintiff claimed on his motion to renew and reargue that the DOB had determined that the certificate of occupancy contained errors, further calling into question its reliability.

While it may turn out that the landlord conducted renovations entitling it to remove the apartment from rent stabilization, I would find that the landlord has failed to meet its burden of proof based on the documentary evidence submitted. The cases cited by the landlord's counsel in support of its claim that this Court and the Appellate Term have previously accepted similar documentation do not support that position, since both decisions cited were issued after a trial at which a full evidentiary presentation was made (*Jemrock Realty Co., LLC v Krugman*, 18 Misc 3d 15 [App Term, 1st Dept 2007], *affd* 72 AD3d 438 [1st Dept 2010], *lv dismissed* 15 NY3d 866 [2010]; *206 W. 104th St., LLC v Cohen*, 41 Misc 3d 134[A], 2013 NY Slip Op 51858[U] [App Term, 1st Dept 2013]). ■

---

"significant dimensional changes" were made in creating a duplex apartment from what had been a single floor unit, resulting in first rent status. In any event, that case does not alter the landlord's burden to show that the alteration resulted in the "obliteration of the prior apartment's particular identity" (*Matter of Devlin*, 309 AD2d at 194).