**Taubes v Yorkshire House Assoc. LLC**

2024 NY Slip Op 30827(U)

March 14, 2024

Supreme Court, New York County

Docket Number: Index No. 151605/2020

Judge: James E. d'Auguste

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:   Hon. James E. d'Auguste          PART 55

*Justice*

-----------------------------------------------------------------X

JON TAUBES, LISA TAUBES

                 Plaintiff,

           - v -

YORKSHIRE HOUSE ASSOCIATES LLC,

                 Defendant.

-----------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 151605/2020 |
| MOTION DATE | 10/15/2021 |
| MOTION SEQ. NO. | 001 |

### DECISION + ORDER ON MOTION

The following e-filed documents, listed by NYSCEF document number (Motion 001) 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 66, 67

were read on this motion to/for       SUMMARY JUDGMENT (AFTER JOINDER)  .

In this landlord-tenant action, plaintiffs Jon Taubes and Lisa Taubes move, pursuant to

CPLR 3212, for an order granting summary judgment in favor of plaintiffs and against

defendants on their first, second, fourth, and sixth causes of action, as well as dismissing all

affirmative defenses asserted against them.

Defendant Yorkshire House Associates LLC opposes and cross-moves pursuant to CPLR

3211 for an order dismissing the first, second, third, fourth and sixth causes of action contained

in the complaint, compelling plaintiffs to pay all outstanding use and occupancy or, alternatively,

compelling plaintiffs to pay ongoing use and occupancy *pendente lite*.

For the reasons set forth below, plaintiff's motion is denied, and the cross-motion is

granted in part and denied in part.

**Background**

Plaintiffs are tenants of apartment 18C located at 401 East 81st Street, New York, New

York 10028 (the premises). Defendant Yorkshire House Associates LLC is a New York limited

151605/2020  TAUBES, JON vs. YORKSHIRE HOUSE ASSOCIATES LLC
Motion No. 001

Page 1 of 21

1 of 21

liability company with offices maintained at 33 East 20th Street, Suite 400, New York, 10003. The premises is a multiple dwelling pursuant to New York's Multiple Dwelling Laws (MDL). Plaintiffs entered into possession of the premises pursuant to a written lease agreement dated March 19, 2016 (original lease) (NYSCEF Doc No. 20, lease agreement dated March 18, 2016) for the apartment; the lease term of which began on April 1, 2016, and ended March 31, 2018, at a monthly rate of $5,700 per month (*id.*).

Upon the expiration of the original lease in March 2018, the parties executed a renewal lease, commencing on April 1, 2018, and ending March 31, 2020, at a monthly rate of $5,900 (NYSCEF Doc No. 21, lease agreement dated February 28, 2018). On February 12, 2020, before the renewal lease expired, plaintiffs commenced this action by filing a summons and complaint containing causes of action for: 1) a declaratory judgment determining that the premises is subject to Rent Stabilization Law; 2) a declaratory judgment determining that any lease offered to plaintiffs must be on a renewal lease form promulgated by the Division of Housing and Community Renewal (DHCR) and that plaintiffs are not required to pay any rent increase until they receive a valid rent-stabilized renewal lease; 3) an order enjoining defendant from commencing holdover or ejectment proceedings; 4) an order awarding money damages to plaintiff for rent overcharges, including a reimbursement of overcharges, interest, and an award of treble damages; 5) an award of damages for violation of the warranty of habitability; and 6) an award of attorneys' fees (NYSCEF Doc No. 1, complaint at 8-14). When the renewal lease expired, defendant did not offer plaintiffs another renewal lease (NYSCEF Doc No. 15, Taubes aff at 2, ¶ 6 & NYSCEF Doc No. 34, Cacaj aff at 6, ¶ 23). After the expiration of the renewal lease, plaintiffs began to occupy the premises on a month-to-month basis.

**151605/2020   TAUBES, JON vs. YORKSHIRE HOUSE ASSOCIATES LLC**
**Motion No. 001**

**Page 2 of 21**

On July 30, 2020, defendant served an amended answer (NYSCEF Doc No. 8, amended answer). Defendant's answer, among other things, denied allegations that the premises were unlawfully deregulated and that it overcharged plaintiffs (*id.* at 6-8, 10-12). Defendant also interposed counterclaims for attorneys' fees and past use and occupancy (*id.* at 13).

*Plaintiffs' Motion*

On October 15, 2021, plaintiffs filed the instant motion for summary judgment (NYSCEF Doc No. 14, Taubes notice of motion). Plaintiffs argue that defendant unlawfully removed the premises from rent stabilization by offering them a market rate lease, where defendant improperly set a first rent for the subject premises at $5,700, which was above the high-rent vacancy deregulation threshold, removing the apartment from the scheme of rent stabilization (NYSCEF Doc No. 17, memo of law in support of plaintiffs' motion for summary judgment at 15). Plaintiffs allege that defendant did not perform the kind of extensive work in the premises that would permit defendant to set a first rent (*id.* at 15-19). Plaintiffs also argue that pursuant to the Rent Act of 2015, defendant could not remove the apartment from rent stabilization due to high rent vacancy until the rental amount reached the threshold amount of $2,700 while the subject premises were occupied (*id.* at 23). In other words, plaintiffs argue that even if defendant was entitled to set a first rent above the threshold amount, the apartment could not be deregulated during the vacancy following the temporary exemption period. Plaintiffs urge the Court to issue a declaratory judgment adjudicating the premises to be rent-stabilized (*id.* at 15-23). Plaintiffs also seek a finding that they were overcharged and ask the Court to implement the default formula to determine the base date rent (*id.* at 26-30). Plaintiffs move for a dismissal of defendant's affirmative defenses as meritless (*id.* at 30). Plaintiffs also move for an award of

**151605/2020  TAUBES, JON vs. YORKSHIRE HOUSE ASSOCIATES LLC**
**Motion No. 001**

**Page 3 of 21**

3 of 21

attorney's fees pursuant to Real Property Law § 234 in the event that they prevail on the instant motion (*id.* at 23-26).

### Defendant's Cross-Motion

On November 24, 2021, defendant cross-moved for dismissal of all causes of action, excluding the cause of action for violations of warranty of habitability, reserving its right to move for dismissal on this cause of action (NYSCEF Doc No. 33, Brett affirmation dated November 23, 2021 at 1 n 2). Defendant asserts that plaintiffs misconstrue the law because, at the relevant time, defendants were permitted to set a first rent above the threshold amount for deregulation since the subject premises was previously part of a larger apartment, 18CD, which has ceased to exist (NYSCEF Doc No. 45, memo of law in support of defendant's cross-motion at 9). According to defendant, the reconfiguration of 18CD into two individual apartments took place after 18CD became vacant but before plaintiffs moved into 18C in April 2016 (NYSCEF Doc No. 34, Cacaj aff at 3, ¶¶ 12, 17). Defendant alleges that since the building was built in 1965, apartment 18CD was a single unit with one external door (*id.* at 2, ¶ 6), without an internal wall separating 18C and 18D (*id.* at 3, ¶ 12). Defendant points to the certificate of occupancy and I-card (NYSCEF Doc Nos. 37, exhibit C & 38, exhibit D), which list six units on the 18th story, as proof that there had always been six apartments on the floor where the subject premises is located (NYSCEF Doc No. 34, Cacaj aff at 2, ¶¶ 6-7). Currently, there are seven apartments, including the subdivided apartments 18C and 18D. Defendant argues that this is the kind of substantial reconfiguration contemplated by the law allowing defendant to set a first rent (NYSCEF Doc No. 33, Brett affirmation dated November 23, 2021 at 5, ¶¶ 14-15). Defendant attaches invoices and receipts (NYSCEF Doc No. 41, exhibit G) purporting to show that, among other things, it constructed a new perimeter wall, installed new electrical systems, and performed

**151605/2020   TAUBES, JON vs. YORKSHIRE HOUSE ASSOCIATES LLC**
**Motion No.  001**

**Page 4 of 21**

4 of 21

[* 4]

INDEX NO. 151605/2020
RECEIVED NYSCEF: 03/14/2024

substantial plumbing work in unit 18C (NYSCEF Doc No. 33, Brett affirmation dated November 23, 2021 at 6, ¶ 21).

Defendant also seeks dismissal of plaintiff's overcharge claims. Here, the base date for calculating the alleged overcharge occurred prior to the enactment of the Housing Stability and Tenant Protection Act of 2019 (HSTPA). Defendant argues that plaintiffs impermissibly ask the Court to examine the apartment's rental history beyond of the four-year lookback period for calculating a rent-overcharge (NYSCEF Doc No. 45, memo of law in support of defendant's cross-motion at 18). Defendant insists that the holding in *Matter of Regina Metro. Co., LLC v New York State Div. of Hous. & Community Renewal*, 35 NY3d 332 (2020)[1] invalidated the 2014 amendment to RSC § 2526.1 (a) (3) (iii), which allows the Court in calculating an overcharge to consider the prior legal regulated rent for the apartment even if it was beyond the four-year look-back period (NYSCEF Doc No. 45, memo of law in support of defendant's cross-motion at 17-22). Defendant asserts that under the iteration of the law applicable prior to the 2014 amendment, the base date rent would have been the rent to which defendant and plaintiff agreed in the initial lease, *i.e.*, $5,700 (*id.* at 20). Thus, according to defendant, plaintiffs were not overcharged since they were never charged above the agreed upon amount (*id.* at 22).

Further, defendant moves for an order compelling plaintiffs to pay use and occupancy in the amount of $158,209.31 in unpaid rent for the period of July 11, 2019, through November 1, 2021, or, alternatively, for an order directing plaintiffs to pay ongoing use and occupancy *pendente lite* at the rate of $5,900 per month (*id.* at 27). Defendant also seeks an order

---

[1] The Court in *Regina* upheld prospectively the provisions of the HSTPA that, among other things, extended the statute of limitations for overcharge claims from four years to six and extended the lookback period from four years to indefinitely; however, *Regina* barred the retroactive application of the HSTPA to cases that were pending at the time the HSTPA was enacted *Matter of Regina Metro. Co., LLC v New York State Div. of Hous. & Community Renewal*, 35 NY3d at 381-383.

**151605/2020   TAUBES, JON vs. YORKSHIRE HOUSE ASSOCIATES LLC**
**Motion No. 001**

Page 5 of 21

dismissing plaintiffs' claims for attorneys' fees because plaintiff's reliance on post-HSTPA amendments contravenes the ruling in *Regina*, which requires the application of law in effect at the time of the alleged overcharge (*id.* at 25).

## Discussion

### *Standard for Summary Judgment*

The proponent of a summary judgment motion has the initial burden of establishing a prima facie showing that it is entitled to summary judgment as a matter of law, providing sufficient evidence that no material issues of triable fact exist (*Trustees of Columbia Univ. in the City of N.Y. v D'Agostino Supermarkets, Inc.*, 36 NY3d 69, 74 (2020); *Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]; *Friends of Animals v Associated Fur Mfrs.*, 46 NY2d 1065, 1067 [1979]). Once this burden has been met, the burden shifts to the opposing party to

> "produce evidentiary proof in admissible form sufficient to require a trial of material questions of fact on which he rests his claim or [to] demonstrate acceptable excuse for his failure to meet the requirement of tender in admissible form; mere conclusions, expressions of hope or unsubstantiated allegations or assertions are insufficient" (*Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]; *De Lourdes Torres v Jones*, 26 N.Y.3d 742, 763 [2016]).

The function of the summary judgment procedure is issue finding, not issue determination (*Vega v Restani Constr. Corp.*, 18 NY3d 499, 505 [2012] ["It is not the function of a court deciding a summary judgment motion to make credibility determinations or findings of fact, but rather to identify material triable issues of fact"]). When considering a motion for summary judgment, the "facts must be viewed in the light most favorable to non-moving party (*Jacobsen v New York City Health & Hosps. Corp.*, 22 NY3d 824, 833 [2014] [internal quotation marks and citation omitted]; *De Lourdes Torres*, 26 NY3d at 763).

The Court will treat defendant's cross-motion as a motion for summary judgment pursuant to CPLR 3211 (c). Notice is not required in the instant case because defendant has

**151605/2020   TAUBES, JON vs. YORKSHIRE HOUSE ASSOCIATES LLC**
**Motion No.  001**

**Page 6 of 21**

[* 6]

revealed its proof and has requested for the motion to be treated as one for summary judgment despite moving pursuant to CPLR 3211 in its notice of motion, clearly charting a summary judgment course (NYSCEF Doc No. 45, memo of law in support of defendant's cross-motion at 8, 11) (*see Mic Prop. & Cas. Ins. Corp. v Custom Craftsman of Brooklyn,* 269 AD2d 333, 334 [1st Dept 2000]).

### *Rent Stabilization and Overcharge*

Plaintiffs seek declaratory and injunctive relief: deeming the apartment rent-stabilized; ordering defendants to supply leases on DHCR lease forms; and precluding defendants from commencing holdover and ejectment proceedings based on any alleged expiration of a month-to-month tenancy. Plaintiffs also seek a finding that defendant overcharged them when it offered plaintiffs market rate leases at $5,700 and $5,900 per month. The threshold issue here is whether apartment 18C is subject to rent regulation under the Rent Stabilization Law (RSL) and pursuant to the provisions of the Rent Stabilization Code (RSC).

CPLR 3001 provides, in relevant part, that the "court may render a declaratory judgment having the effect of a final judgment as to the rights and other legal relations of the parties to a justiciable controversy whether or not further relief is or could be claimed." While declaratory judgment is an appropriate remedy in an action concerning rents, in this case numerous issues of fact exist that preclude the issuance of summary judgment in favor of either party in the instant matter.

At the outset, there is an issue of fact regarding the configuration of apartment 18C and the now defunct apartment 18CD. Plaintiffs argue that 18C is not a newly created apartment, but that defendant merely restored two formerly existing rent-stabilized apartments to their original states when defendant subdivided 18CD into apartments 18C and 18D, returning apartment 18C

**151605/2020   TAUBES, JON vs. YORKSHIRE HOUSE ASSOCIATES LLC**
**Motion No. 001**

**Page 7 of 21**

7 of 21

to rent-stabilized status (NYSCEF Doc No. 17, memo of law in support of plaintiffs' motion for summary judgment at 18-19). Plaintiffs insist that the subject premises remains substantially unchanged, besides a small newly erected non-weight bearing wall that was installed to subdivide the two apartments (*id.* at 13). Plaintiffs argue that there have been no significant dimensional changes or extensive and substantial work constituting the requisite reconfiguration and obliteration of the apartment's particular identity (*id.* at 19). In support, plaintiffs point out that the certificate of occupancy dated September 30, 1965, the year in which the building was constructed, lists seven apartments on the 17th story, where the subject premises is located, which is identified as the 18th floor of the building since there is no 13th floor (NYSCEF Doc No. 15, Taubes aff at 4 ¶ 25; NYSCEF Doc No. 24, exhibit G). Plaintiffs assert that there are currently and have always been seven separate apartments on the 18th floor/17th story (NYSCEF Doc No. 15, Taubes aff at 4 ¶¶ 26-27). Plaintiffs attach the DHCR building rent roll in support and additionally point out that every year between 1984 and 2016, defendant dutifully registered apartment 18C and apartment 18D with DHCR not as a single apartment 18CD but as two separate units (*id.* at 4 ¶¶ 28-29; NYSCEF Doc No. 29, exhibit L).

Plaintiffs also argue that pursuant to RSC § 2526.1 (a) (3) (iii),[2] which had not yet been repealed by the HSTPA at the time of plaintiffs' occupancy, the first tenancy after a vacancy following a temporary exemption should be rent-stabilized, regardless of whether the monthly rental rate exceeded the threshold for deregulation—$2,700 at the time of plaintiffs' occupancy (NYSCEF Doc No. 17, memo of law in support of plaintiffs' motion for summary judgment at 20-22). Plaintiffs insist that the Rent Act of 2015 (L 2015, ch 20, part A, § 10) amended RSL §

---

[2] The Rent Stabilization Code is promulgated by the DHCR pursuant to the Rent Stabilization Law (RSC § 2520.1) and is construed to carry out the intent of the Rent Stabilization Law (RSC § 2520.3).

**151605/2020   TAUBES, JON vs. YORKSHIRE HOUSE ASSOCIATES LLC**
**Motion No. 001**

Page 8 of 21

[* 8]

26-504.2[3] to clarify that an apartment could only be deregulated due to high rent vacancy when the rental amount reached the threshold amount of $2,700 and only while the subject premises were occupied, not during vacancy (NYSCEF Doc No. 17, memo of law in support of plaintiffs' motion for summary judgment at 21). Thus, according to plaintiffs, 18C could not have been properly deregulated during the vacancy that followed the temporary exemption. Plaintiffs insist that even if $5,700 was the proper first rent, they should have been offered a rent-stabilized lease (NYSCEF Doc No. 15, Taubes aff at 3, ¶ 19).

In opposition, defendant contends that the subject premises has always been part of a larger apartment 18CD with one external door (NYSCEF Doc No. 34, Cacaj aff at 2-3, ¶¶ 6-9 and NYSCEF Doc No. 45, memo of law in support of defendant's cross-motion at 14-15). Defendant insists that the DHCR rent roll showing 18C and 18D registered as separate apartments is "merely a formality, which is clarified by looking at the four-corners of the document as a whole" (NYSCEF Doc No. 34, Cacaj aff at 3, ¶ 9). Defendant also attaches copies of the certificate of occupancy and the I-card for the building, purporting to show that there were previously six apartments, not the seven apartments that plaintiffs claim, on the 18th floor, where the subject premises is located (*id.* at 2-3, ¶¶ 6-8; NYSCEF Doc Nos. 37, exhibit C & NYSCEF Doc No. 38, exhibit D). Defendant insists that 18C was completely reconfigured after 18CD became vacant following a long-term owner occupancy (NYSCEF Doc No. 34, Cacaj aff at 3-4, ¶¶ 12-14 & NYSCEF Doc No. 45, memo of law in support of cross-motion at 15). Defendant claims that, among other things, it erected a new perimeter wall, subdividing 18CD for the first time, which allowed defendant to charge a first rent above the $2,700

---

[3] At the applicable time, RSL § 26-504.2 permitted high rent vacancy deregulation for, as is relevant here, "any housing accommodation that becomes vacant on or after the effective date of the rent act of 2015, where such legal regulated rent was two thousand seven hundred dollars or more."

threshold for deregulation (*id.*). Defendant attaches copies of invoices, receipts, and canceled checks, as well as memoranda purporting to show the extensive work done in apartments 18C and 18D (NYSCEF Doc No. 41, exhibit G).

Plaintiffs oppose defendant's cross-motion and characterize the alleged work in the apartment as mere renovation or improvement, insufficient to support a finding of first rent (NYSCEF Doc No. 48, Gribben affirmation dated January 19, 2022 at 3, ¶ 11). Plaintiffs question the validity and sufficiency of the receipts and invoices provided by defendant, alleging that many of them are duplicates and that some of the work was performed after plaintiffs had already moved in (*id.* at 5 ¶ 23; NYSCEF Doc No. 63, memo of law in opposition to cross-motion at 16). Notably, plaintiffs point out that none of the receipts are actually for the installation of an external door in 18C, but only for repair of a door after they were already occupying the subject premises (NYSCEF Doc No. 47, Taubes aff at 3, ¶ 10). Plaintiffs also call attention to the fact that defendants have not attached architect plans or Department of Building permits (NYSCEF Doc No. 63, memo of law in opposition to cross-motion at 11-12).

While, in its reply, defendant concedes that the certificate of occupancy correctly lists seven apartments on the 18th floor/17th story (NYSCEF Doc No. 64, memo of law in reply at 4 & 8), defendant stops short of admitting that apartment 18CD originally existed as two separate apartments that were combined into a single unit during the lengthy owner occupancy period. Defendant insists that plaintiffs are overlooking the fact that one larger unit was subdivided into two smaller units, which is the kind of reconfiguration that would allow a first rent to be set (*id.* at 5 & 9). Defendant alleges that 18CD was designed to facilitate any future reconfiguration into two smaller units and already had the potential for two external doors, one of which was "shored -off" during the period of owner's use (*id.* at 8-9). Defendant, among other things, argues that

**151605/2020 TAUBES, JON vs. YORKSHIRE HOUSE ASSOCIATES LLC**
**Motion No. 001**

**Page 10 of 21**

[* 10]

10 of 21

the DHCR rent roll showing the registration of 18C and 18D as two distinct apartments is irrelevant because 18CD was temporarily exempt due to owner occupancy (*id.* at 12).

The inquiry regarding the original configuration of apartment 18CD is central to the determination of the apartment's regulatory status.

Prior to the passage of the HSPTA, at the time plaintiffs took possession of the subject premises, it was well-settled that[4]

> "A landlord may charge first rent, pursuant to the [RSC], where the landlord 'substantially alters the outer dimensions of a vacant housing accommodation, which qualifies for a first rent equal to or exceeding the applicable amount qualifying for deregulation' (9 NYCRR 2520.11 [r] [12]) . . . Stated somewhat differently, first rent is permitted when the perimeter walls of the apartment have been substantially moved and changed and where the previous apartment, essentially, ceases to exist, thereby rendering its rental history meaningless. . . . This Court has described the test for whether alterations qualify for first rent as reconfiguration plus obliteration of the prior apartment's particular identity." (*Dixon v 105 W. 75th St., LLC*, 148 AD3d 623, 627 [1st Dept 2017], quoting *Matter of Devlin v New York State Div. of Hous. & Community Renewal*, 309 AD2d 191, 194 [1st Dept 2003] [internal quotation marks and additional citations omitted]).

Courts have consistently held that the reconfiguration of a vacant rent-stabilized apartment from one multiroom unit into two smaller units or from two units into a larger combined apartment was sufficient to allow a landlord to set a first rent (*Dixon*, 148 AD3d at 627; *Devlin*, 309 AD2d at 194; *Matter of 300 W. 49th St. Assoc. v New York State Div. of Hous. & Community Renewal, Off. of Rent Admin.*, 212 AD2d 250, 253-254 [1st Dept 1995]; *Feltman v 106th Realty LLC*, 2023 NY Slip Op 31592[U], *5 [Sup Ct, NY County 2023]; *Brookes v 157th St. Assoc., LLC,* 2023 NY Slip Op 31257[U], *5-6 [Sup Ct, NY County 2023]).

RSC § 2526.1 (a) (3) (iii) was amended in 2014 and, at the time 18C became vacant, provided that

---

[4] RSC § 2520.11 [r] [12] was repealed by the HSTPA and high rent vacancy deregulation is generally no longer applicable.

**151605/2020   TAUBES, JON vs. YORKSHIRE HOUSE ASSOCIATES LLC**
**Motion No. 001**

**Page 11 of 21**

11 of 21

"Where a housing accommodation is vacant or temporarily exempt from regulation pursuant to section 2520.11 of this Title on the base date, the legal regulated rent shall be the prior legal regulated rent for the housing accommodation, the appropriate increase under section 2522.8, and if vacated or temporarily exempt for more than one year, as further increased by successive two year guideline increases that could have otherwise been offered during the period of such vacancy or exemption and such other rental adjustments that would have been allowed under this Code."

The prior version of RSC § 2526.1 (a) (3) (iii), which defendants urge the Court to apply in the event the Court finds that the apartment is rent-stabilized, provided that

"Where a housing accommodation is vacant or temporarily exempt from regulation pursuant to section 2520.11 of this Title on the base date, the legal regulated rent shall be the rent agreed to by the owner and the first rent stabilized tenant taking occupancy after such vacancy or temporary exemption, and reserved in a lease or rental agreement; or, in the event a lesser amount is shown in the first registration for a year commencing after such tenant takes occupancy, the amount shown in such registration, as adjusted pursuant to this Code."

For the purposes of determining whether an apartment is rent-stabilized, "each version [of RSC § 2526.1 (a) (3) (iii)] contemplates that when a once temporarily exempt apartment . . . returns to the marketplace, it resumes its rent-stabilized status, because it was the status it had before the temporary exemption" (*Matter of AEJ 534 E. 88th, LLC v New York State Div. of Hous. & Community Renewal*, 194 AD3d 464, 470 [1st Dept 2021]. However, the 2014 version of the regulation in effect when 18C became vacant and plaintiffs moved in, "must be read in conjunction with the appliable version of RSC § 2520.11 (r) (5), which exempts from rent stabilization housing accommodations that 'became or become vacant on or after June 24, 2011, with a *legal regulated rent* of $2,500 or more per month'" (*Connors v Kushner Companies LLC*, 2021 WL 3468142, *3 [Sup Ct, Kings County, Aug. 6, 2021, index No. 522076/2017]). Thus, under the 2014 amendment, if the rent of a vacant previously exempt apartment properly calculated in accordance with

**151605/2020   TAUBES, JON vs. YORKSHIRE HOUSE ASSOCIATES LLC**                         **Page 12 of 21**
**Motion No. 001**

[* 12]                                                    12 of 21

the RSC did not exceed the threshold amount of $2,500, the apartment would unequivocally be subject to rent-stabilization (*id.*). But, as the *Connors* court found,

"there is no language in either the amended RSC § 2526.1 (a) (3) (iii) or RSC § 2520.11 (r), . . . nor has this court located any pertinent case law expressly prohibiting the high-rent vacancy deregulation of an apartment following the expiration of a temporary exemption where the legal regulated rent (properly determined under amended RSC § 2526.1 [a] [3] [iii]) surpasses the relevant threshold." (*id.*)

While plaintiffs insist that the Rent Act of 2015 clarified that an apartment could only be deregulated due to high rent vacancy when the rental amount reached the threshold amount for deregulation prior to a vacancy, the case they cite in support of this proposition was reversed. (*see People's Home Improvement, LLC v Kindig*, 77 Misc 3d 136 [A], 2022 NY Slip Op 51350[U], *3 [App Term, 2d Dept, 2nd, 11th, & 13th Jud Dists 2022], *revg* 65 Misc 3d 1016 [Civ Ct, Kings County 2019]). In that case, the Appellate Term, Second Department held:

"We find that since the apartment had a legal regulated rent of more than $2,700 'at any time on or after the effective date of rent act of 2015' which apartment 'bec[a]me[] vacant after the effective date of the rent act of 2015,' high rent deregulation was allowed pursuant to the Rent Act of 2015" (*id.*).

Similarly, in *326 Starr, LLC v Martinez*, 74 Misc 3d 77 [App Term, 2d Dept, 2nd, 11th, & 13th Jud Dists 2021], the Appellate Term, Second Department held that for vacancies that occurred after the effective date of the Rent Act of 2015 and before RSL § 26-504.2 was repealed by the passage of the HSTPA effective June 19, 2019,

"apartments can be removed from rent stabilization based upon the rent 'at any time on or after the effective date of the rent act of 2015, which becomes vacant after the effective date of the rent act of 2015' without 'reference to the rent at the time' of the vacancy (quoting *Altman v 285 W. Fourth LLC*, 31 NY3d 178, 185 [2018]), and that would include any available post-vacancy statutory increases" (*326 Starr, LLC*, 74 Misc 3d at 81; *see also Perugini v 162-164 82nd St., LLC*, 2022 NY Slip Op 32643[U], **6 [Sup Ct, NY County Aug. 5, 2022, index No. 150450/2019]).

As is relevant here, if the subject premises was always part of a single multiroom apartment previously known as apartment 18CD, then under the circumstances in this case as

**151605/2020  TAUBES, JON vs. YORKSHIRE HOUSE ASSOCIATES LLC**
**Motion No. 001**

Page 13 of 21

13 of 21

[* 13]

alleged by defendant, the newly created 18C may no longer be subject to rent stabilization, as contemplated by the now repealed RSC § 2520.11 (r) (12) and the relevant caselaw. Under those parameters, defendant may have been permitted to set a first rent exceeding the $2,700 high rent deregulation threshold in effect at the time. However, numerous issues of fact exist here, such as whether apartment 18CD was always maintained as a single unit or whether it was combined from two smaller apartments during the owner occupancy period for the benefit of the occupying owner and later subdivided and returned to its original configuration as two smaller rent-stabilized units. While the DHCR registration and the certificate of occupancy tend to support plaintiffs' assertions, it is possible that 18CD had been maintained as one apartment occupied by the owner even prior to the premises becoming subject to rent stabilization.

There are also issues of fact regarding the existence of any external doors and the degree of the other changes that were made to the apartment now known as 18C. At this stage, the Court cannot determine as a matter of law whether 18C should be deemed rent-stabilized based on the record laid bare before it alone. Accordingly, plaintiffs are not entitled to a declaratory judgment that apartment 18C is rent-stabilized.

Based on the foregoing, the Court cannot reach the merits of plaintiffs' overcharge claims, and the Court declines to order defendant to supply plaintiffs with rent-stabilized lease renewals. To do otherwise would require a finding that apartment 18C is subject to rent stabilization. Thus, at this stage of the proceeding, the Court declines to issue a declaratory judgment on these issues as no determination has been made as to the subject premises' regulatory status.

151605/2020  TAUBES, JON vs. YORKSHIRE HOUSE ASSOCIATES LLC
Motion No. 001

Page 14 of 21

14 of 21

### Use and Occupancy

RPL § 220 provides, in relevant part, that a "landlord may recover a reasonable compensation for the use and occupation of real property, by any person, under an agreement." The First Department has held that

> "[t]he reasonable value of use and occupancy is the fair market value of the premises after the expiration of the lease . . . and it is the landlord, not the tenant, who has the burden of proving reasonable value of use and occupancy. . . . In determining the reasonable value of use and occupancy, the rent reserved under the lease, while not necessarily conclusive, is probative" (*Mushlam, Inc. v Nazor*, 80 AD3d 471, 472 [1st Dept 2011] [internal citations omitted]).

A court may award use and occupancy where it would be patently unfair for a tenant to remain in possession without paying rent (*Brookes*, 2023 NY Slip Op 31257[U] at *17). A court may award use and occupancy retroactively and prospectively (*id.*).

The Court also retains broad discretion in deciding whether to compel payment of use and occupancy *pendente lite* (*see Alphonse Hotel Corp. v 76 Corp.*, 273 AD2d 124, 124 [1st Dept 2000]). An award of ongoing use and occupancy for the duration of a proceeding "'accommodates the competing interests of the parties in affording necessary and fair protection to both' and preserves the status quo until a final judgment is rendered" (*MMB Assoc. v Dayan*, 169 AD2d 422, 422 [1st Dept 1991] [internal citations omitted]).

Defendant seeks an order awarding past use and occupancy in defendant's favor in the amount of $158,209.31 for the period of July 11, 2019, through November 1, 2021, as well as use and occupancy *pendente lite*, or ongoing use and occupancy (currently in the amount of $171,100), for the duration of the proceeding. Defendant urges that an award of use and occupancy is within the discretion of the Court and is an equitable measure to prevent a tenant or an occupant from living rent-free during the pendency of litigation (NYSCEF Doc No. 45, memo

**151605/2020 TAUBES, JON vs. YORKSHIRE HOUSE ASSOCIATES LLC**
**Motion No. 001**

**Page 15 of 21**

15 of 21

of law in support of defendant's cross-motion at 28). Defendant asks the Court to set the use and occupancy at the rate reserved in the parties' last agreement (*id.*).

Plaintiffs oppose and allege that defendant's claims that it created a new unit in contravention of the building's certificate of occupancy are alone enough to deprive defendant of an award of use and occupancy (NYSCEF Doc No. 63, memo of law in opposition to cross-motion at 23). Additionally, plaintiffs allege that there are twelve apartments on the 14th floor, where there should be 11 according to the certificate of occupancy, and 10 apartments on each floor on floors 15 through 17, where there should be nine according to the certificate of occupancy (*id.* at 24). Plaintiffs insist that defendant's operation of the building in contravention of the certificate of occupancy deprives defendant of the right to maintain an action for use and occupancy pursuant to MDL §§ 301 and 302 (*id.*).

In its reply, defendant concedes that there are seven units on the 18th floor/17th story and maintains that the use of the 18th floor is in compliance with the certificate of occupancy. (NYSCEF Doc No. 64, memo of law in reply at 17). Defendant asserts that the building has operated with a valid certificate of occupancy for the duration of plaintiffs' tenancy (*id.*). Defendant insists that the fact that the certificate of occupancy has never been revoked is proof that it has complied with all Department of Buildings' requirements (*id.*). Defendant does not rebut plaintiffs' allegations that floors 14 through 17 operate with a greater number of apartments than the numbers allotted in the certificate of occupancy. Defendant simply argues that even assuming there are discrepancies between the number of apartments on other floors and the certificate of occupancy, "which remains unresolved," this does not affect the health and safety of the building and does not relieve plaintiffs from paying their rental obligations (*id*).

151605/2020 TAUBES, JON vs. YORKSHIRE HOUSE ASSOCIATES LLC
Motion No. 001

Page 16 of 21

The crux of plaintiffs' argument that 18C is rent stabilized revolves around the allegation that there have always been seven apartments on the 18th floor/17[th] story. The parties agree that there are currently seven apartments on the 18th floor/17th story of the building and have been seven since plaintiffs began to occupy 18C. Therefore, there is no dispute that the operation of the 18th floor/17th story complies with the certificate of occupancy. Even if defendant is operating the building with four additional units in contravention of the certificate of occupancy, defendant is not precluded from collecting use and occupancy for 18C since plaintiffs have not alleged that 18C is affected by the alleged certificate of occupancy violations (*see De La Cruz v 676 Miller Ave. LLC*, 2023 NY Slip Op 32895[U], *6 [Sup Ct, Kings County 2023].

Balancing the equities and exercising its broad discretion to award use and occupancy, the Court finds that defendant is entitled to ongoing monthly use and occupancy *pendente lite* at the rate of $5,900 per month, the last agreed upon amount in the renewal lease, from the date of the filing of defendant's cross-motion beginning in December 2021 (*Feltman v 106th Realty LLC*, 2022 NY Slip Op 32592[U], *5 [Sup Ct, NY County 2022]). While plaintiffs have not paid any rent since June 2019 (amounting to an additional $158,209.31), the Court declines to order retroactive use and occupancy at this juncture. If it is determined at trial that the subject premises is rent stabilized, plaintiffs will be entitled to a credit based on any paid use and occupancy.

*Attorney's Fees*

Plaintiffs seek attorneys' fees pursuant to RPL § 234, which provides a reciprocal right to tenants to recover attorneys' fees whenever there is a clause in a lease allowing a landlord to recover attorneys' fees. Plaintiffs also seek attorneys' fees pursuant to their last existing lease, which states in relevant part that "[owner] agrees that . . . [y]ou have the right to collect

**151605/2020  TAUBES, JON vs. YORKSHIRE HOUSE ASSOCIATES LLC**
**Motion No. 001**

Page 17 of 21

17 of 21

[* 17]

reasonable legal fees and expenses incurred in a successful defense by [y]ou of a lawsuit brought by Owner against [y]ou or brought by [y]ou against Owner to the extent provided by Real Property Law, section 234." (NYSCEF Doc No. 20, lease agreement dated March 18, 2016, ¶ 19[B]). It is well-established that "[o]rdinarily, only a prevailing party is entitled to attorney's fees" (*Nestor v McDowell*, 81 NY2d 410, 415 [1993]). Here, neither party has prevailed. In light of the foregoing, plaintiffs' motion seeking attorneys' fees is denied.

### *Affirmative Defenses*

Pursuant to CPLR 3211 (b), "[a] party may move for judgment dismissing one or more defenses, on the ground that a defense is not stated or has no merit."

Dismissing defendant's first, second, and third affirmative defenses alleging, respectively, that all rents charged have been lawful, that all lease renewals have been for lawful rents, and that there has been no rent overcharge, is not warranted here, as there are issues of fact regarding the regulatory status of the subject premises, that, if resolved in defendant's favor, would potentially make all rents paid to defendant lawful. Plaintiffs have not established that the first, second, and third affirmative defenses are devoid of merit. Accordingly, these affirmative defenses are not subject to dismissal.

With respect to the fourth affirmative defense asserting that plaintiffs' claims are barred by the doctrine of estoppel, this Court finds that it is not a meritorious defense in this case. Although plaintiffs agreed to pay a monthly rent to defendant in a rental agreement, defendant provides nothing showing that any of the issues or claims were litigated in a prior proceeding. Thus, plaintiffs are permitted to challenge the rents as unlawful. Further, defendant does not offer any argument in opposition to dismissal of this affirmative defense.

**151605/2020  TAUBES, JON vs. YORKSHIRE HOUSE ASSOCIATES LLC**
**Motion No.  001**

Page 18 of 21

Defendant's fifth, sixth, and ninth affirmative defenses allege that: plaintiffs failed to timely commence the instant action and are thus barred by the doctrine of laches and the statute of limitations; and that they are not entitled to retroactive remedies of relief. Plaintiffs commenced this action within four years of moving into the subject premises, which is within the four-year lookback period contemplated by the statute applicable at the relevant time to the case at bar. Additionally, defendant does not oppose dismissal of these affirmative defenses. Accordingly, they are devoid of merit and are dismissed.

Defendant's seventh affirmative defense that any award of retroactive damages would violate defendant's constitutional rights is not subject to dismissal, as issues of fact exist regarding the regulatory status of the apartment and any determination concerning damages is premature.

Defendant's eighth affirmative defense that it relied on promulgated provisions, rules, guidelines and opinions of the RSC by DHCR and the Department of Housing and Development is not without merit. The issue central to the resolution of this case is whether the subject premises was sufficiently reconfigured to such a degree that its particular identity was obliterated. Here, the factual circumstances of the case are at issue. Defendant may well have lawfully relied on the complicated statutory scheme surrounding rent stabilization when it deregulated the apartment.

Defendant's tenth affirmative defense that plaintiffs will receive a windfall is meritless. In the event that plaintiffs prevail in this proceeding, the damages plaintiffs seek are statutory. This defense is therefore dismissed.

151605/2020   TAUBES, JON vs. YORKSHIRE HOUSE ASSOCIATES LLC
Motion No. 001

Page 19 of 21

Plaintiffs may not test the sufficiency of their own claims by moving to strike the affirmative defense of failure to state a cause of action. Accordingly, the eleventh affirmative defense alleging that the complaint fails to state a cause of action is not without merit.

The twelfth affirmative defense claiming that the leases do not contain clauses providing for the payment of legal fees is patently false. The copies of leases supplied by the parties provide for an award of legal fees under certain circumstances. Therefore, the Court dismisses the twelfth affirmative defense.

Dismissal of the thirteenth affirmative defense alleging that plaintiffs are not entitled to treble damages is not warranted here, as there are issues of fact regarding the regulatory status of the subject premises. Plaintiffs have not established that the thirteenth affirmative defense is devoid of merit. Accordingly, this affirmative defense is not subject to dismissal.

**CONCLUSION**

Accordingly, it is

ORDERED that the motion by plaintiffs Jon Taubes and Lisa Taubes for summary judgment is denied except that the branch of plaintiffs' motion seeking to dismiss defendants' affirmative defenses is granted to the extent that defendant's fourth, fifth, sixth, ninth, tenth, and twelfth affirmative defenses are dismissed; and it is further

ORDERED that the portion of the cross-motion by defendant seeking use and occupancy is granted, and plaintiffs shall post a bond for use and occupancy from November 2021 through March 2024 at $5,900 per month, amounting to $171,100, no later than April 1, 2024; and it is further

151605/2020   TAUBES, JON vs. YORKSHIRE HOUSE ASSOCIATES LLC
Motion No.  001

Page 20 of 21

ORDERED that the cross-motion by defendants is granted to the extent of awarding ongoing use and occupancy *pendente lite* at $5,900 per month due by the 5th of each month; and it is further

ORDERED that other unpaid use and occupancy owed to defendant, if any, or overpayments by plaintiffs, if any, will be determined at trial; and it is further

ORDERED that the cross-motion is otherwise denied.

This constitutes the decision and order of the Court.

| 3/14/2024 | | | | James d'Auguste, J.S.C. | |
|-----------|---|---|---|---|---|
| DATE | | | | | |

| CHECK ONE: | ☐ CASE DISPOSED | ☒ NON-FINAL DISPOSITION | |
|------------|-----------------|-------------------------|---|
| | ☐ GRANTED ☐ DENIED | ☐ GRANTED IN PART | ☒ OTHER |
| APPLICATION: | ☐ SETTLE ORDER | ☐ SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | ☐ INCLUDES TRANSFER/REASSIGN | ☐ FIDUCIARY APPOINTMENT | ☐ REFERENCE |

151605/2020  TAUBES, JON vs. YORKSHIRE HOUSE ASSOCIATES LLC
Motion No. 001

Page 21 of 21