75 UWS Prop. LLC v Quinn (2025 NY Slip Op 50113(U))

[*1]

75 UWS Prop. LLC v Quinn

2025 NY Slip Op 50113(U)

Decided on February 3, 2025

Civil Court Of The City Of New York, New York County

Stoller, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on February 3, 2025
Civil Court of the City of New York, New York County

75 UWS Property LLC, Petitioner,

against
Brenda Quinn, et al., Respondent.

Index No. 300595/2022

For Petitioner: Heather Ticotin
For Respondent: Sagar Sharma

Jack Stoller, J.

75 UWS Property LLC As Successor In Interest JMW 75 LLC, the petitioner in this proceeding ("Petitioner"), commenced this holdover proceeding against Brenda Quinn ("Respondent"), a respondent in this proceeding, and James Quinn ("Co-Respondent"), another respondent in this proceeding (collectively, "Respondents"), seeking possession of 166 West 75th Street, Apt. 409, New York, New York ("the subject premises") on the allegation of termination of an unregulated tenancy. Respondents interposed an answer electronically filed on March 25, 2022 with a challenge concerning the regulatory status of the subject premises and a counterclaim sounding in rent overcharge. The Court held a trial of this matter and received submissions and stipulations as of January 23, 2025.
The trial record and stipulations
The parties stipulated that Petitioner is the proper party to commence this proceeding, that the parties had been in a landlord/tenant relationship with one another by a series of three leases, that the leases expired, and that Petitioner caused a predicate notice to be served on Respondents prior to the commencement of this proceeding. The parties further stipulated that the subject premises is a unit that previously was two different units.
Bruce Kinlin ("the Architect") testified that he is an architect; that he is a partner in a small firm that does residential work in Manhattan and outside of New York City; that he has been doing this work for twenty-five years; that his firm was hired in 2013 to work on the design and modifications of the apartments in the building; that he knows the subject premises; and that he renovated the subject premises and other units in the building.
Petitioner submitted into evidence a drawing of the fourth floor of the building as it looked before the work was done and a drawing dated 2017 of the fourth floor after the units had been combined.
The Architect testified that they demolished a kitchen and a wall between the two studio apartments, which had had kitchenettes and bathrooms; that he transformed a bathroom into a closet; that the two units were separate apartments when they started; that one of the former apartments had an approximate area of 196 square feet and the other was about 214 square feet; that there were separate entrances for the two former apartments before the combination; that the plan was to combine to two apartments into one; that the door from the hallway was removed and sealed so that there was only a doorway that went into what had been one of the former apartments; that there was an interior door installed; that a kitchenette and appliances were removed; that the plumbing was removed from a bathroom in one unit and it became a closet; that the subject premises was now a one-bedroom apartment; that there was one bathroom and kitchen in the new apartment; that no rooms were demolished; that the new apartment had one single apartment entrance; that the new unit had slightly over 400 square feet; and that the combination created a new apartment that was twice the size of the previous two.
The Architect testified on cross-examination that he did most of the work in 2013 and 2014; that in 2017 he made a record of the work that was done; that there were many apartments that they were involved in; that the subject premises was one of the first; that the application to the New York City Department of Buildings ("DOB") was submitted in 2013; and that he does not know exactly when the work was completed.
Co-Respondent testified that he first moved into the Building in January of 2007; that he moved into apartment 311 on the third floor; that he lives in the subject premises currently; that a landlord at the time offered him to move to another apartment in exchange for a month's free rent because they wanted to make modifications on the garbage chute; that he moved into the subject premises in September of 2014; that his rent was $2,000; that the rent is now $2,130; that the previous landlord said to him that he was the first person to move into the renovated building; and that the subject premises looked like a new apartment when he moved.
The agreement that Co-Respondent referred to was entered into between Respondents and Petitioner's predecessor-in-interest ("the Prior Owner") on September 30, 2014 ("the Agreement"). The Agreement provided, in pertinent part, that Respondents would relocate from another apartment in the building to the subject premises; that the "current monthly legal rent" for the subject premises was $2,000 a month; and that the Prior Owner would give Respondents a two-month rent credit. Respondents entered into a two-year lease for the subject premises commencing on October 15, 2014 with a monthly rent of $2,000. Respondents entered into a one-year lease for the subject premises commencing on October 1, 2016 with a monthly rent of $2,070. Respondents entered into a one-year lease for the subject premises commencing on October 1, 2017 with a monthly rent of $2,130. Petitioner submitted a rent breakdown showing that, based upon a monthly rent of $2,130, Respondents owed no arrears as of March 31, 2021 and that Respondents did not pay anything after that.
 Discussion
If the subject premises is subject to the Rent Stabilization Law, Petitioner cannot maintain this proceeding, as Petitioner did not allege any cause pursuant to the Rent Stabilization Law, nor serve notices as required by the Rent Stabilization Law. N.Y.C. Admin. Code §26-511(c)(4), 9 N.Y.C.R.R. §2524.1(a). The outcome of Petitioner's cause of action therefore turns [*2]on the rent regulatory status of the subject premises.[FN1]

A reconfiguration of an apartment into something so unrecognizable as to be construed a new apartment entitles a landlord to set a first rent at a market rate. Dixon v. 105 W. 75th St. LLC, 148 AD3d 623, 627 (1st Dept. 2017). Respondents do not dispute that the Prior Owner reconfigured the subject premises so as to entitle the Prior Owner to set Respondents' rent in 2014 at a market rate. Respondents argue that the subject premises remained subject to the Rent Stabilization Law because that first rent was $2,000, below the threshold for deregulation in 2014. N.Y.C. Admin. Code §§26-504.3(a)(3), 26-511 (c)(14).[FN2]

Before the HSTPA occasioned an amendment of the Rent Stabilization Code, the Code provided an exemption from rent regulation where the landlord "substantially alters the outer dimensions of a vacant housing accommodation, which qualifies for a first rent equal to or exceeding the applicable amount qualifying for deregulation ...." 9 N.Y.C.R.R. §2520.11(r)(12). If the mere substantial alteration of an apartment alone effectuated a deregulation of the apartment, the regulation would not have to include the qualifier "which qualifies for a first rent equal to or exceeding the applicable amount qualifying for deregulation". Regulations are generally subject to same canons of construction as statutes. ATM One, LLC v. Landaverde, 2 NY3d 472, 477 (2004), Matter of Cty. of Oneida v. Zucker, 147 AD3d 1338 (4th Dept. 2017). The Court must construe a statute so as to give effect to every word therein to the extent possible, Matter of Mestecky v. City of NY, 30 NY3d 239, 243 (2017). Conversely, the Court cannot conclude that the Legislature deliberately placed a phrase in the statute which was intended to serve no purpose, Rodriguez v. Perales, 86 NY2d 361, 366 (1995), or to be superfluous. Matter of NY Cty. Lawyers' Ass'n v. Bloomberg, 95 AD3d 92, 101 (1st Dept. 2012). The Court must therefore construe the former 9 N.Y.C.R.R. §2520.11(r)(12) to mean that a substantial alteration alone would not deregulate an apartment. Rather, the first rent resulting from that alteration would have to exceed the statutory threshold for deregulation, which in 2014 was $2,500. 9 N.Y.C.R.R. §2520.11(r)(5).[FN3]
Cf. Taubes v. Yorkshire House Assoc. LLC, 2024 NY Slip Op. 30827(U), *13-14 (S. Ct. NY Co. 2024)(a substantial alteration of an apartment would have permitted an owner to deregulate an apartment by setting a first rent above the statutory threshold for deregulation in effect at the time). As the rent for the subject premises never exceeded the statutory threshold, the subject premises is subject to the Rent Stabilization Law and Petitioner's cause of action for eviction with no cause does not lie.
Respondents interposed a rent overcharge counterclaim. As Petitioner last increased Respondents' rent in 2017, the statute of limitations and lookback period for four years that prevailed before the amendment of the Rent Stabilization Law in 2019 apply. Wise v. 1614 Madison Partners, LLC, 214 AD3d 550 (1st Dept. 2023), Rose v. Gazivoda, 2024 NY Slip Op. [*3]31296(U)(S. Ct. NY Co.). Four years before the interposition of Respondents' counterclaim is March 25, 2018. As there have been no rent increases since March 25, 2018, Respondents' rent overcharge cause of action does not lie.
Accordingly, it is ordered that the Court dismisses this proceeding and it is further ordered that the Court dismisses Respondents' counterclaim.
This constitutes the decision and order of the Court.
Dated: February 3, 2025
New York, New York
HON. JACK STOLLER
J.H.C.

Footnotes

Footnote 1:The Agreement does not affect Respondents' challenge the rent regulatory status, as an agreement waiving a benefit of the Rent Stabilization Law is void. Liggett v. Lew Realty LLC, 42 NY3d 415, 417 (2024).
Footnote 2:While this law was in effect at the time that Respondents moved into the subject premises, the statutes have been amended by the Housing Stability and Tenant Protection Act of 2019 ("HSTPA") and no longer provide for high-rent vacancy deregulation.

Footnote 3:See footnote 1.